CHARLES H. NEAL and others *vs.* EDWARD F. COBURN.

Franklin. . Opinion November 25, 1898.

*Bank Check.   Forgery.   Negligence.*

A bank is presumed to know the signatures of its depositors.

If a bank pay to an innocent holder for value the amount of a check purporting to be drawn upon it by one of its depositors, but the signature to which was in fact forged, the bank cannot recover back the amount from such holder.

If such holder on demand repay the amount to the bank that does not entitle him to recover the amount from a prior innocent holder for value who had indorsed the check.

AGREED STATEMENT.

Assumpsit to recover two hundred and fifty dollars paid by the plaintiffs to the defendant for a check which was found to be a forgery, and of which the following is a copy:—

$250.                                    BOSTON, June 19, 1895.

BAY STATE TRUST COMPANY

Pay to J. W. Crewe or order Two Hundred and Fifty Dollars.

H. C. HAVEN.

HENRY C. HAVEN.

No. 1000.

[INDORSEMENTS.]

J. W. CREW,
E. F. COBURN,
NEAL & QUIMBY,
FURBISH, BUTLER & OAKES,

Plea, general issue and brief statement of special matter of defense that if defendant ever did promise, etc., he, the defendant was relieved and discharged from all liability or obligation before the commencement of this action.

The parties agreed to the following statement of facts:—

"For the purposes of this trial it is agreed: that the check declared on in plaintiffs' writ, purporting to have been drawn by H. C. Haven, in favor of J. W. Crew, on the Bay State Trust Company, dated June 19, 1895, for two hundred and fifty dollars, ($250.00) is a forgery; that the defendant received said check from said Crew on the 5th or 6th day of July, 1895; that said Crew was a stranger in the vicinity, boarding at the hotel of the defendant, and gave this check in payment of his board bill, which amounted to ninety-nine dollars and seventy-five cents, ($99.75), receiving from the defendant the balance, amounting to one hundred fifty dollars and twenty-five cents in money; that said Crew is not known or believed by the parties to have ever owned any property in this State, which was attachable; that defendant has never seen or heard from said Crew since taking the said check from him, as aforesaid, and does not know or believe that his real name is Crew, but believes he was an imposter; that said Crew left immediately upon paying his board bill as aforesaid; that defendant indorsed said check and delivered the same to the plaintiff on July 20, 1895, paying an account which plaintiff had against him of about fifty dollars, ($50.00), receiving the balance in money; that plaintiffs indorsed and delivered said check to Furbish, Butler and Oakes, on July 22, 1895; that Furbish, Butler and Oakes indorsed and deposited said check to their credit for collection, in the Phillips National Bank, on July 23, 1895; that the Phillips National Bank indorsed the same and forwarded it for collection to their correspondent in Boston, the National Bank of the Commonwealth, where it was received on the 26th day of July, 1895; that on the same day it was presented through the clearing house and Merchants National Bank, by the National Bank of the Commonwealth, to the said Bay State Trust Company for collection, (the Bay State Trust Company not being a member of the Clearing House Association, and all checks drawn upon them being received by the Merchants National Bank as an accommodation to them); that said check was received with others by the Bay State Trust Company, in due course of business as aforesaid, marked paid

and charged to the account of said H. C. Haven, he being a regular customer of said bank and having an account there; that when said Trust Company received said check it did not discover that it was a forgery, the signature thereto being a close imitation of the signature of said H. C. Haven; that as soon as said Bay State Trust Company discovered that said check was a forgery, namely, sometime from July 27, to July 29, 1895, inclusive, it at once returned said check to the National Bank of the Commonwealth, demanding a return of the amount; that the National Bank of the Commonwealth refused to return the amount unless they first received it from the Phillips National Bank, from which bank they received said check; that said National Bank of the Commonwealth received said check from the Bay State Trust Company, and immediately forwarded it to the Phillips National Bank, demanding a return of the amount, where it was received by said Phillips National Bank, on July 30, 1895; that the Phillips National Bank returned said check to Furbish, Butler and Oakes, on July 30, 1895, demanding the amount thereof of them; that on the same day Furbish, Butler and Oakes returned said check to the plaintiffs, demanding the amount of them, which was then and there paid by the plaintiffs to said Furbish, Butler and Oakes; that said Furbish, Butler and Oakes at once remitted the amount to the Phillips National Bank, and they to the National Bank of the Commonwealth where it was received and paid to the Bay State Trust Company, where it was received and credited to the account of said H. C. Haven on August 5, 1895; that the plaintiffs offered to return said check to the defendant, and demanded a return of the amount of him, on July 31, 1895, and the defendant agreed to pay the same and did pay thereon the sum of one hundred dollars, but subsequently refused to pay the balance; that the defendant required no identification of said Crew, nor his right, or title to said check before taking the same; that said Haven has now drawn upon said Bay State Trust Company about 650 checks, and had at the time of the forgery drawn about 350; that said Crew on June 19, 1895, called at the cottage of said Haven and procured three genuine checks as an accommodation, he said, to

send away, one for $50 and two for $25 each, paying the money for the same, and at the same time stole three blank checks from the back of said Haven's check book, namely, Nos. 998, 999, 1000; that the check in suit is the blank numbered 1000; that said Crew at the time of transferring said check to the defendant said, that Haven wanted him (said Crew) to hold said check until about the first of August before collecting the same, and that he (Crew) would like to have him (defendant) hold the same until that time; that said defendant did not impart or make known said request to said plaintiffs. Copy of check to be a part of the case and original to be transmitted to law court. Upon the foregoing facts it is agreed that the law court may render such judgment as the law and facts require. If the action is maintainable, defendant to be defaulted for $150, and interest from date of writ; if not maintainable, plaintiffs to become non-suit."

*F. E. Timberlake, J. C. Holman and F. W. Butler*, for plaintiffs.

It is a general rule that a bank must know the signature of its depositor, and between the bank and the depositor, if no negligence on the part of the depositor, this rule is absolute; and if money is paid by it on a forged check or instrument it must bear the loss. *Price* v. *Neal*, 3 Burr. 1355; Dan. on Neg. Insts. §§ 1359, 1655, and cases there cited.

If the suit were between the drawee bank and the depositor, Haven, or between the drawee bank and a party who took the check in the usual course of business, without any suspicions of its forgery, or without suspicious circumstances sufficient to have aroused the suspicions of a prudent man, the loss would fall upon the bank. *Levy* v. *Bank of the United States*, 4 Dallas, 234; *Bank of St. Albans* v. *Farmers and Mechanics Bank*, 10 Vt. 141; *National Bank of North America* v. *Bangs*, 106 Mass. 441.

But this responsibility, based upon presumption alone, is decisive only when the party receiving the money has in no way contributed to the success of the fraud, or to the mistake of fact under which the payment was made. *National Bank of North America* v. *Bangs*, supra.

If the loss can be traced to the fault or negligence of either

party, it shall be fixed upon him.     *Gloucester Bank* v. *Salem Bank*, 17 Mass. 33, 42 ; *Danvers Bank* v. *Salem Bank*, 151 Mass. 280.   *First National Bank of Crawfordsville* v. *First National Bank of Lafayette*, 4 Indiana, 355 (51 Am. St. Rep. 221), and cases there cited.

The check being a forgery was absolutely worthless in the hands of the forger.   When defendant indorsed it he guaranteed the genuineness of the signature of the drawer and all prior indorsements and that his title was good.   *Peoples Bank* v. *Franklin Bank*, 88 Tenn. 299 ; (17 Am. St. Report, 887) ; 3 Am. and Eng. Ency. page 225, and the same is true of each subsequent indorser.

If the drawee paying a forged check within a reasonable time after discovering the forgery returns or offers to return the same to the indorsee from whom it was received, it can recover back the money, if the indorsee is placed in no worse position than he would have been in had the bank refused payment when presented. *National Bank of North Am.* v. *Bangs*, 106 Mass. 441, 445 ; *Ellis* v. *Ohio L. I. & T. Co.*, (64 Am. Dec. 630.) 4 Ohio St. 628 ; *Welch* v. *Goodwin*, 123 Mass. 77 ; *People's Bank* v. *Franklin Bank*, supra ; *Danvers Bank* v. *Salem Bank*, 151 Mass. 280 ; *Merchants Bank* v. *National Bank of the Commonwealth*, 139 Mass. 513 ; *Star Ice Co.* v. *New Hampshire Nat'l Bank*, 60 N. H. 442 ; *Birmingham Nat. Bank* v. *Bradley*, 103 Ala. 109, (49 Am. State Rep. 17, and note).

The check being a forgery was a nullity from the beginning.

Possessed of no commercial life or value.   Nothing passed from the defendant to the plaintiffs, as a consideration for the plaintiffs' money.

Being a forgery it was the duty of the bank upon which it was drawn to give the party from which they received it notice within a reasonable time after discovering the forgery.   *Canal Bank* v. *Bank of Albany*, 1 Hill 291 ; Dan. on Neg. Inst. § 1372, and cases there cited.

The mistake of the bank was no legal prejudice to the defendant inasmuch as the forger departed for parts unknown on the 6th day of July, and had been away nearly one month before check was indorsed by defendant.

The plaintiffs together with all subsequent indorsers and the drawee bank had a right to believe that the defendant in taking the check had by the usual and proper investigation satisfied himself of its authenticity.

Had the check been presented to the drawee bank direct over its counter, by the forger himself, payment would have been refused until identification of the person presenting the same, had been received by the bank and his title shown.

The defendant was negligent in taking the check from a stranger, without inquiring as to its genuineness. Defendant made no investigation or inquiry himself, although living only a short distance from the cottage of the said Haven. At the time of the indorsement and delivery to the plaintiffs, defendant never communicated to them the fact that he was requested to hold the check for a long period of time, to wit: from July 6 to August 1, a circumstance which ought to have aroused the suspicions of any prudent man, but suppressed and concealed his knowledge, and by so doing aided in the fraud.

The drawee bank was guilty of no actual negligence in not discovering the forgery, as the signature was a very close imitation of the signature of said Haven. No question can be raised that the bank did not promptly return the check upon discovering it to be a forgery.

By the agreed statement Crew is an admitted stranger with never any attachable property in this State; that immediately after passing check to defendant he left the State and has never been seen or heard from since. Such being the facts, defendant is in no worse position than he would have been in had the drawee bank refused payment when the check was presented.

It was the duty of the bank to detect the forgery, and if it failed in that duty it should be held accountable to the extent of the injury, but where no loss has resulted to any one through this failure of duty, why should the bank forfeit the money so paid out by it?

There is no justice or propriety in permitting defendant to profit by a mistake which his own negligent disregard of duty has contributed to induce the drawee bank to commit.

*H. L. Whitcomb and J. P. Swasey*, for defendant.

SITTING:  PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, STROUT, SAVAGE, JJ.

EMERY, J.   Haven was a depositor in the Bay State Trust Company, a bank in Boston.  A written instrument purporting to be his check upon that bank, payable to Crew or order, was by Crew indorsed for value to Coburn, the defendant.   Coburn indorsed it for value to Neal and Quimby.   That firm indorsed it for value to Furbish, Butler & Oakes.   The latter firm indorsed it for collection to the Phillips National Bank.   The Phillips Bank indorsed it for collection to the Commonwealth Bank of Boston, which bank presented it for payment through the clearing house to the Bay State Trust Company, the bank upon which it was drawn. The Bay State Trust Company paid it as Haven's check, marked it paid and charged the amount to Haven's account.   Three days afterward it was discovered that the drawer, (Haven's) signature was forged, and the paper was returned through the same channel to Neal and Quimby, the plaintiffs, who refunded the amount and in their turn presented it to Coburn, the defendant, and demanded of him to refund the amount in his turn which he refused to do. Hence this action for money had and received to enforce such refunding.

It is conceded that Neal and Quimby cannot maintain this action unless the Bay State Trust Company could do so had all the intermediate indorsers refused to refund.   The question therefore is,— assuming the good faith of all parties,—who shall bear the loss in such case, the first innocent indorser for value or the bank which accepted the paper as genuine and paid it as the check of its depositor?

Since a check belongs to that class of written instruments called commercial paper, the question stated is not so much one of abstract justice in the particular case, as it is of what is the established or workable rule in this class of cases.   Commercial paper has long been governed by special rules which, while designed to ensure justice, are also designed to ensure the free and safe use of an indispensable commercial agency.   The commercial world needs

and seeks for the plain workable rule rather than for the somewhat uncertain abstract right in each case. We think such a rule decisive of this case has been long and firmly established.

A check is in form and nature a species of bills of exchange and is pro tanto governed by the same rules (*Foster* v. *Paulk*, 41 Maine, 425), hence decisions as to bills of exchange upon this question are applicable to this case. In 1715 in an action by an indorsee against the acceptor of a bill of exchange, tried before Lord Raymond in the King's Bench Court sitting at Guildhall to hear commercial cases, it was held that the acceptance sufficiently proved the signature of the drawer. Evidence offered by the acceptor to affirmatively prove the bill to be a forgery was rejected, one of the reasons given being " the danger to negotiable notes." *Jenys* v. *Fowler*, 2 Strange, 931. In 1762 before Lord Mansfield, in the King's Bench then also sitting at Guildhall, was tried an action for money had and received to recover back money paid to an innocent indorsee of a bill of exchange by the drawee. The signature of the drawer was forged. Lord Mansfield stopped the defendant's counsel, saying the case could not be made plainer by argument, and ordered judgment for the defendant. *Price* v. *Neal*, 3 Burr. 1355. In 1815 the question came before the Common Pleas also then sitting in London. The banker sought by an action for money had and received to recover back money paid by him to an innocent holder of a bill of exchange bearing a forged acceptance of a correspondent of the banker's. The plaintiff was nonsuited. *Smith* v. *Mercer*, 6 Taunt. 76. In 1882 the English " Bills of Exchange Act " was passed " to codify the law relating to Bills of Exchange, Cheques and Promissory Notes." In section 54 it was enacted that, " the acceptor of a bill by accepting it is precluded from denying to a holder in due course the existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the bill." 4 Eng. Rul. Cases 159, 160. The rule stated by Lord Raymond, in 1715, seems to have become firmly established in that great commercial country.

In this country the earliest published judicial decision upon the question appears to have been made in 1802 by the Supreme

Court of Pennsylvania. An innocent holder of a check for value presented it for deposit to his credit in the bank upon which it was drawn. The bank received it, and credited the amount to the holder and debited the same to the supposed drawer. It soon proved to be a forgery, whereupon the bank charged the amount back to the holder's account. The holder then brought an action against the bank, and recovered judgment. *Levy* v. *Bank of U. S.* 1 Binney, 27. In 1825 a case similar in principle came before the U. S. Supreme Court which always decides for itself questions of general commercial law as applicable to the whole country. The Bank of the United States remitted to the Bank of Georgia papers purporting to be bank-notes of the latter bank which were received and credited to the account of the former bank. Some days afterward the supposed notes were found to be counterfeit and the Bank of Georgia tendered them back to the U. S. Bank and charged the amount back to that bank, and refused to acknowledge any indebtedness for them. The U. S. Bank brought an action for balance of account stated, and for money had and received, and was held entitled to recover the amount so deposited. *Bank of U. S.* v. *Bank of Georgia,* 10 Wheat. 333. This decision does not appear to have been questioned in any federal court. The applicability of this decision is manifest when it is recalled that the acceptor of a bill of exchange is in the same category as the maker of a note. If one who pays what purports to be his note cannot recover the money back, no more can one who pays what purports to be a bill of exchange or check drawn upon him.

In 1820, five years earlier than the case in Wheaton, a similar case occurred in Massachusetts between two banks as to the counterfeit bills of one of them which it received from the other and paid as genuine. It was held that it could not recover back the money paid. *Gloucester Bank* v. *Salem Bank,* 17 Mass. 33. As late as 1890 the Supreme Court of Massachusetts stated the rule as follows: "In the usual course of business, if a check purporting to be signed by one of its depositors is paid by a bank to one who finding it in circulation or receiving it from the payee by indorsement took it in good faith for value, the money cannot be recovered back on the

discovery that the check is a forgery." *Danvers Bank* v. *Salem Bank*, 151 Mass. 282.

In a New York case in 1850 the bank upon which a draft was drawn refused payment for want of funds of the drawer, whereupon . Goddard, the correspondent of the supposed drawer, being informed of the draft but without seeing it, left his own check for its payment, which amount was remitted to the holders of the draft. The next day Goddard on seeing the draft found it to be forged. Held, however, that he could not recover back the amount of the holder. *Goddard* v. *Merchants Bank*, 4 N. Y. 149. In 1871 a bank in New York paid to an innocent holder a forged draft drawn upon it and then sought to recover the money back. The court rendered judgment for the defendant as in the earlier case, using this language : "For more than a century it has been held and decided without question that it is incumbent upon the drawee of a bill to be satisfied that the signature of the drawer of the bill is genuine,—that he is presumed to know the handwriting of his correspondent;—and if he accepts or pays a bill to which the drawer's name has been forged he is bound by the act and can neither repudiate the bill nor recover the money paid. . . . . A rule so well established and so firmly rooted in the jurisprudence of the country ought not to be overruled or disregarded." *National Park Bank* v. *Ninth National Bank*, 46 N. Y. 80, 81.

Other courts have also recognized the rule more or less explicitly. *Commercial Bank* v. *National Bank*, 30 Md. 11 ; *Germania Bank* v. *Boutell*, 60 Minn. 192 ; *St. Albans* v. *Farmers Bank*, 10 Vt. 141 ; *Star Ins. Co.* v. *State Bank*, 60 N. H. 442 ; *Dipont Bank* v. *Fayette Bank*, 90 Ky. 22.

The only allusion to the rule we have found in the published opinions of this court is in *Belknap* v. *Davis*, 19 Maine, 457, in 1841, where in an action by the holder against the acceptor of a bill of exchange it was held that "the acceptance admits the signature of the drawer and the authority to draw." So far as it goes this would seem to be in the same line with the decisions above cited and quoted from, and would seem to indicate that the rule so long and firmly upheld by those decisions is in harmony with the law of commercial paper in this state.

In some cases the courts have been led to inquire whether the condition of the holder had changed between the payment of the check and notice to him of the forgery, and to hold that if the holder had suffered no loss by reason of the payment he should refund the amount to the bank or drawer. The rule cited does not make any such distinction,—does not call for any inquiry into the condition of the holder. To do so is to abandon the rule, and with it all certainty. It would leave every person receiving payment on a check in complete uncertainty as to whether and when it was in fact finally paid. It would be a destructive blow to the usefulness of checks as an instrumentality of trade. It is also against the reason and equity of the rule as stated by the courts recognizing it, and hence is inconsistent with the rule. Wherever the rule is upheld the doctrine of such cases must be rejected.

The reason usually given for the rule is that it is impracticable for the indorsee or holder of a bill of exchange or check to know or learn whether the signature of the drawer is genuine, and that the bank or other drawee has the best means of knowing or learning the fact; or, as sometimes expressed, the bank may be presumed to know the signature of its depositor, and the acceptor the signature of his business correspondent. Lord Mansfield in *Price* v. *Neal*, supra, compared the equities. He said that the action for money had and received could not be maintained unless it was against conscience in the defendant to retain it and that it was not against conscience for an innocent holder to retain money paid to him by the drawee of a bill of exchange which he had in good faith paid value for. As between parties equally innocent there seems to be no more equity in throwing off the loss from one to the other, than in leaving it where it fell. In cases like these however, where the loss fell in the regular course of business upon the bank which could have known and should have known the forgery, it seems positively inequitable to throw off that loss upon an innocent man who had much less opportunity of knowing. As also said by Lord Mansfield in *Price* v. *Neal*, if negligence is to be considered it was as much if not more in the drawee or bank as in the holder. But whatever the reason or equity of the rule and however much it

may be criticised by text writers and theorists, it has been so long established and so explicitly recognized by the courts in commercial communities it should stand as the rule until modified by legislative action. It evidently has been found to be a workable rule, and its plainness and certainty should not be obscured by fine judicial distinctions confusing to the lay mind.

It has been suggested that this rule breaks against another rule of the law of commercial paper, viz:—that the defendant by indorsing the check guaranteed to every subsequent holder the genuineness of the signature of the drawer. But the bank upon which the check was drawn did not become a holder. It did not purchase the check. The bank paid it, extinguished it. It was no longer a check, and could no longer have a holder as such. It had become merely a voucher. *Skowhegan Bank* v. *Maxfield*, 83 Maine, 576.

The plaintiff cites cases in which it was found that the bank was induced by the conduct of the holder to assume the check to be genuine without investigation. In other cases it was found that the holder knew or had reason to know of the forgery or was put upon inquiry before taking the check. In these cases it was held that the holder was without the rule.

In this case, however, no such facts can be found. Haven the supposed drawer was occupying a summer cottage in the neighborhood. The check was written upon one of his blanks taken from his check-book. The signature was so good an imitation that the bank accepted it. Crew, the forger, had previously received genuine checks from Haven. He was a boarder at the defendant's hotel or boarding house. While after the event the defendant now believes Crew to have been an impostor, nothing in the case shows that he so believed or had reason to so believe before the event. It is true he was told by Crew that Haven desired the check to be held about three weeks before presentment, but that was no reason for suspecting the genuineness of the signature. It might have generated a doubt as to the solvency of Haven but no more. While perhaps a banker would have hesitated to accept the check under the circumstances, we find in them nothing that would natu-

rally have deterred a man like the plaintiff. In the New York case, *Goddard* v. *Rutland Bank*, supra, the circumstances surrounding the transfer of the check from the forger to the first holder were even more suspicious than here, and were held to be insufficient to affect the holder.

We find the plaintiff was an innocent holder for value, and that the loss by the forgery fell in the course of business upon the bank. We hold that the defendant though he has suffered no loss is protected by the rule cited, and that under the rule the loss cannot be thrown off the bank upon him.

It is conceded that the defendant's verbal promise to refund made under a misapprehension of the law was without consideration, and hence not binding.