DEDHAM NATIONAL BANK *vs.* EVERETT NATIONAL BANK.

Suffolk.    November 15, 1900. — January 3, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

A bank cashed and credited forged checks drawn on another bank payable "to the order of cash," presented to it by the known clerk of a depositor, without inquiring as to the genuineness of the signatures or requiring an indorsement, and indorsed the checks "Pay only through Clearing House" to itself, signed by its cashier.  The checks were paid by the bank on which they were drawn through an employee, who would have discovered the forgeries if he had compared the checks with a genuine signature on file with that bank.  Six months later, the forgeries being discovered, the drawee demanded repayment.  *Held*, that the drawee could not recover from the bank that first cashed the checks, there being nothing to take this case out of the rule that a bank paying a forged check to a *bona fide* purchaser cannot recover back the money paid.

CONTRACT, by a bank to recover money paid to the defendant bank on two forged checks drawn on the plaintiff.  Writ dated October 27, 1898.

The trial in the Superior Court was before *Braley*, J., who reported the case for the consideration of this court.

By the report it appeared that the checks paid by the plaintiff were both drawn upon the Dedham National Bank of Dedham, were made payable "to the order of cash" and were signed "W. J. Glancy."  Beneath each were the words "Payable through Boston Clearing House."  The first, dated July 30, 1897, was for $150, and the second, dated September 2, 1897, was for $200.

It was in evidence that Glancy had been a depositor in the plaintiff bank about ten years; that Glancy's account was practically a "sleeping deposit"; that he was not in the habit of drawing checks upon it; that these were the only two checks purporting to be drawn by him during that year.  There was also evidence that country depositors seldom send in their books to be balanced, and that Glancy had not presented his book between July and January.

The two checks were presented to the defendant bank by one Hitchens, clerk of one Fenno.  Fenno was then, and had been for many years, one of the depositors of the defendant.  Hitchens represented Fenno at the bank three or four times a week.

At the request of Hitchens, $50 of the first check was paid to him, which he stated was for Fenno, and $100 was credited to Fenno's account with the bank.   On the second check, upon a similar request, the defendant paid over its counter to Hitchens the sum of $100, which the teller supposed was for the benefit of Fenno, and credited the account of H. L. Fenno with the sum of $100.   The defendant's teller testified that during the time Hitchens made deposits for Fenno, checks were paid in cash in whole or in part for Fenno.

The defendant indorsed both checks as follows:

"Pay only through Clearing House to the Everett National Bank of Boston.                    J. T. Eager, Cashier."

On August 2 and September 7, 1897, respectively, the two checks were, through the clearing house, paid in behalf of the plaintiff by one Arthur M. Daniels, an employee of the plaintiff, and charged by him to Glancy's account.   The judge found that the alleged signature, "W. J. Glancy," appearing upon both checks, was forged by Hitchens.   He also found as follows: "At the time when these checks were cashed, W. J. Glancy's signature was on file with said bank, and I find that if said Arthur M. Daniels had compared the alleged signature of the checks with the genuine signature of W. J. Glancy he would have discovered the forgery."

On February 25, 1898, the plaintiff wrote to the defendant that the checks had been discovered to be forgeries and requested repayment.

The judge further found that, at the time Hitchens presented both checks to the defendant bank, that bank "did not inquire as to the genuineness of the signature of W. J. Glancy, nor require the indorsement of the check by the person presenting it for payment, or of the depositor to whose account the check was to be credited."   He also found as follows: "The evidence was conflicting as to a custom that when a check, in the form in which these checks were drawn, was presented for payment under the circumstances disclosed in this case, it was the duty of the bank to require the identification of the person to whom it was paid, if unknown to the bank, and his indorsement if not a depositor, or the indorsement of the depositor for whose account it was deposited.   I am not satisfied that any such custom exists, the usage varying with different banks."

The plaintiff asked the judge to rule:

"1. That if the defendant's conduct led the plaintiff to pay these checks, and that they are forgeries, the plaintiff can recover unless there was an unreasonable delay in detecting the forgeries and that the defendant was injured thereby. 2. That on all the evidence the court would not be warranted in finding that the defendant has suffered any loss through any lack of due diligence on the plaintiff's part in discovering the forgeries. 3. If the checks were forgeries, and the defendant had not paid on account of them, before the plaintiff notified it of the forgeries, more than $150, the plaintiff can recover the balance paid by it to the defendant on account of them, namely, $200, in any event. 4. On all the evidence the plaintiff has exercised due diligence in discovering the forgeries. 5. On all the evidence, if the checks are forgeries, the plaintiff is entitled to recover."

The judge declined to give these rulings, and found and ordered judgment for the defendant.

*E. F. McClennen*, for the plaintiff.

*W. I. Badger & S. Robinson*, for the defendant.

HOLMES, C. J.    This is an action to recover the amount of two forged checks on the plaintiff bank paid by it to the defendant. Both checks were drawn payable to cash and were without indorsement. Both were presented for deposit to the account of Fenno, a depositor in the defendant bank, by the depositor's clerk, who is found to have been the forger, the first on July 31, the second on September 4, 1897. At the time of depositing the first, which was for $150, the clerk asked for and received $50 cash, for Fenno, as he said, and on depositing the second, which was for $200, he got $100 in the same way. The residue of the two checks was credited by the defendant to Fenno on his account. Fenno afterwards overdrew his account but subsequently made the overdraft good and his deposit has exceeded the amount of the credit on these checks since the defendant was notified of the forgery. Both checks were paid by the plaintiff through the clearing-house, and it is found that if the plaintiff's servant who paid them had compared the signatures on the checks with a genuine signature of the supposed maker which it had on file, he would have discovered the forgery. Owing to an

examination of Fenno's deposit the defendant was led to inquire by telephone shortly after the second check was paid, whether the signatures were genuine, and was answered that they were all right. The plaintiff did not demand repayment until February 25, 1898. The judge found and ordered judgment for the defendant. The plaintiff asked rulings in favor of its right to recover either the whole amount or all but the sums actually paid out to the clerk, and the case is here on exceptions to the refusal to give them.

The plaintiff's argument is directed to proving that we should not adopt the rule laid down in *Price* v. *Neal*, 3 Burr. 1354, according to which a drawee paying a forged draft or check to a *bona fide* purchaser cannot recover back the money paid. We are aware that this rule has been questioned by some text writers. But it is of such universal or nearly universal acceptance that we shall go into no extended discussion. *Gloucester Bank* v. *Salem Bank*, 17 Mass. 33, 42, 43. *National Bank of North America* v. *Bangs*, 106 Mass. 441, 444. *Welch* v. *Goodwin*, 123 Mass. 71, 77. *First National Bank of Danvers* v. *First National Bank of Salem*, 151 Mass. 280, 283. *Bank of United States* v. *Bank of Georgia*, 10 Wheat. 333, 348. 2 Dan. Neg. Instr. (3d ed.) §§ 1359–1361.

Probably the rule was adopted from an impression of convenience rather than for any more academic reason; or perhaps we may say that Lord Mansfield took the case out of the doctrine as to payments under a mistake of fact by the assumption that a holder who simply presents negotiable paper for payment makes no representation as to the signature, and that the drawee pays at his peril. See *Wilkinson* v. *Johnson*, 3 B. & C. 428, 436; *Bernheimer* v. *Marshall*, 2 Minn. 78, 84; *Bank of St. Albans* v. *Farmers' & Mechanics' Bank*, 10 Vt. 141, 145, 146; *Ellis* v. *Ohio Life Ins. & Trust Co.* 4 Ohio St. 628, 662.

The ground of a recovery for a payment under a mistake of fact is that the existence of the fact supposed was the conventional basis or tacit condition of the transaction. If parties are so far at arm's length that each takes the risk of what he does, of course one of them cannot recover money paid because he finds that he has made a mistake. We believe that, now at least, especially in the case of a bank, it is a matter of general under-

standing that, when the holder of a check in no way contributes to the deception, the bank does take the risk of paying, so far as the signature is concerned. But if this is so mistake disappears as a ground for recovery, and there is no other. It is vain to point out that in other cases more or less analogous there is an implied representation, e. g. *Boston & Albany Railroad* v. *Richardson*, 135 Mass. 473. The grounds for difference in understanding may be very nice, but even if the decisions had originated the difference without adequate ground, when once it exists its existence is a sufficient reason for continuing to decide in accordance with it.

The plaintiff attempts to make out that the defendant led the plaintiff to make the payment by requiring no indorsement of the checks, on the ground that its officer was led by that fact to suppose that they were cashed for the man who appeared to have been their maker. The attempt to prove a custom that would justify such an inference failed, and the judge may not have believed even that the officer was influenced in his conduct by the absence of an indorsement. But if he was, the evidence did not show any duty on the part of the defendant to anticipate such a result.

The indorsement of the check by the defendant was not an indorsement by the payee. It was not an indorsement for purposes of transfer, and contained no representations beyond what would have been imported by a presentment in person. *National Bank of North America* v. *Bangs*, 106 Mass. 441, 444.

In view of the ground on which we put the case, it does not seem to be necessary to consider further objections to the plaintiff's recovery, or to examine more precisely the position of the defendant as a purchaser for value. *Fox* v. *Bank of Kansas City*, 30 Kans. 441. *Market Bank* v. *Hartshorne*, 3 Abb. Ct. of App. 173.

*Judgment affirmed.*