Argued July 25, decided August 1, 1911.

## FIRST NATIONAL BANK *v.* BANK OF COTTAGE GROVE.

[117 Pac. 293.]

BANKS AND BANKING—DEPOSITS—FORGED OR ALTERED PAPERS.
1. A bank is bound to know the signature of its depositors.

BILLS AND NOTES—BONA FIDE PURCHASER—HOLDER IN DUE COURSE.
2. The holder of a check on which the drawer's name has been forged, and who contributes in any way to the carrying out of the fraud, is not a holder in due course.

BILLS AND NOTES—CHECKS AS BILLS OF EXCHANGE.
3. A check is in the nature of a bill of exchange, and is treated as such.

BILLS AND NOTES—INSTRUMENTS NEGOTIABLE—CHECK—EFFECT OF PAY-
    MENT—"HOLDER IN DUE COURSE."
4. Under Section 5885, L. O. L., which declares that a "holder in due course" is a holder who has taken the instrument under condition that it is complete and regular upon its face, that he became the holder of it before it was overdue, and without notice of its previous dishonor, if such was the fact, that he took it in good faith and for value, and that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it, a bank, which accepts and pays a check bearing the forged name of its depositor, on presentation by another bank, a holder in due course, does not itself become a holder in due course, since the check when so paid, had run its course and was no longer a check, but only a canceled voucher.

BILLS AND NOTES—"ACCEPTANCE"—PAYMENT AS ACCEPTANCE.
5. The payment of a check by the drawee amounts to more than an acceptance, and has all the efficacy of an "acceptance," which is defined

by Section 965, L. O. L., to be the signification by the drawee of his assent to the order of the drawer.

Bills and Notes — Bona Fide Purchasers — Payment of Forged Check—Recovery of Payment.

6. Under the negotiable instruments law (Section 5834 *et seq.,* L. O. L.), which provides that where the holder of a check procures it to be accepted or certified, the indorsers are discharged from liability, and Section 5856, which provides that where a signature is forged it is wholly inoperative, and that no right to enforce payment thereof against any party thereto can be acquired under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery, a bank, which has paid a check bearing the forged signature of its depositor, on its presentation by another bank, a holder thereof in due course, which has in no way contributed to the fraud, and is not guilty of negligence, cannot, on afterwards discovering the forgery, recover the money paid.

From Lane: Lawrence T. Harris, Judge.

Statement by Mr. Justice Bean.

This is an appeal from a judgment sustaining a demurrer to each cause of action in a case wherein the First National Bank of Cottage Grove is plaintiff and the Bank of Cottage Grove is defendant, and dismissing the action.

The plaintiff, for its first cause of action, after the allegations of the corporate existence of plaintiff and defendant, sets forth:

"That the plaintiff and defendant during all the times herein mentioned were banking corporations located and doing business in the City of Cottage Grove, in the county of Lane and State of Oregon. That, on or about the 5th day of October, 1908, the defendant presented to the plaintiff for payment a certain forged, fraudulent, and worthless check, purporting to have been drawn by one F. M. Chapman upon plaintiff bank, in favor of J. H. Barnwell, for $55, dated October 2, 1908, and indorsed in blank by J. H. Barnwell, Garman Hemenway Co., and the defendant herein. That said forged, fraudulent, and worthless check was in words and figures as follows, to wit:

" 'Cottage Grove, Oregon, Oct. 2, 1908.   No.—
" 'First National Bank.

" 'Pay to J. H. Barnwell or bearer, $55.00 fifty-five dollars.                                                F. M. Chapman.'

"That there was indorsed on the back of said check words and figures as follows, to wit: 'J. H. Barnwell, Garman Hemenway Co. Bank of Cottage Grove, Paid Oct. 5, 1908, Cottage Grove, Oregon.' That F. M. Chapman was a depositor in plaintiff's bank, and had to his credit a sufficient amount to pay said check. That said check was presented to plaintiff by defendant with a large number of other checks on said day, and that plaintiff, believing said check to be genuine, and believing that the purported signature thereon of F. M. Chapman was genuine, and, relying upon such belief, paid to the defendant the said sum of $55, and charged the same to the account of said F. M. Chapman, who thereafter refused to allow credit to plaintiff for said check. That thereafter, and on or about the 6th day of October, 1908, plaintiff discovered that said check was false, fraudulent, forged, and worthless, and thereupon immediately notified said defendant of said facts, and tendered said check to said defendant and demanded from said defendant the repayment of said sum of $55. That said plaintiff paid said sum of $55 to said defendant, relying upon the genuineness and validity of said check, and under the mistake that said check was genuine and valid and the check of said F. M. Chapman, and was drawn by said F. M. Chapman and bore his genuine signature. That in fact said check was false, worthless, and fraudulent, and the signature to the same, purporting to be that of F. M. Chapman, was forged and fraudulent. That defendant refused and still refuses to pay to this plaintiff said sum of $55. That by reason of the premises there is now due and owing from said defendant to this plaintiff the sum of $55, with interest at the rate of 6 per cent per annum from the 6th day of October, 1908."

The second cause of action for $50, paid in like manner upon the forged check of F. M. Chapman, and the third cause for $75, paid upon the forged check of the Disston Lumber Company, signed by H. D. Crites on its behalf, are in substance and form the same as the first, except as to names, amounts, dates, and the fact that the third check was delivered to plaintiff at defendant's bank and taken to plaintiff's bank, where the forgery was discovered within less than two hours, and the defendant immediately notified.                    AFFIRMED.

For appellant there was a brief over the names of *Messrs. Thompson & Hardy,* with an oral argument by *Mr. Helmus W. Thompson.*

For respondent there was a brief and an oral argument by *Mr. James C. Johnson.*

MR. JUSTICE BEAN delivered the opinion of the court.

It will be noticed that there is no allegation that defendant knew or suspected the checks were forged.   Nor is defendant charged with any act of negligence in failing to make proper inquiry as to the genuineness of the checks, or that plaintiff was misled through any fault of defendant.   It was assumed, upon the argument of counsel, that plaintiff acted in entire good faith, and it is conceded that there are no special circumstances connected with the case, such as the ability to obtain the money from the persons committing the fraud.

The question is whether a banker, upon whom a check or bill has been drawn, and who has paid the check or bill upon which the drawer's name has been forged, can, upon discovery of the forgery, recover the amount from the holder in due course, under the circumstances as shown by the complaint.   Upon this important question, which is presented to this court for the first time, there has been a great difference of opinion between the courts and the eminent text-writers, and before entering into a consideration of our own statutes on the subject we will refer to a few of these authorities.   Following the ancient case of *Price* v. *Neal,* 3 Burrows, 1355, decided by Lord MANSFIELD, the courts of this country have many times held that such a recovery could not be had, maintaining the position that, as between the drawee and the holder in due course of a check, the drawee bank is to be deemed the place of final settlement, where all prior mistakes and forgeries can be corrected at once and finally, and if overlooked and payment is made the matter is at an end, and there can be no recovery thereafter.   *National Bank*

*of Rolla* v. *First National Bank,* 141 Mo. App. 719 (125 S. W. 513) ; *Redington* v. *Woods,* 45 Cal. 406 (13 Am. Rep. 190) ; *Bank of Quincey* v. *Ricker,* 71 Ill. 439 (22 Am. Rep. 104) ; *First National Bank* v. *Northwestern Bank,* 152 Ill. 296 (38 N. E. 739: 26 L. R. A. 289: 43 Am. St. Rep. 247) ; *National Bank* v. *Ninth National Bank,* 46 N. Y. 77; *Ellis* v. *Life Ins. Co.,* 4 Ohio St. 628 (64 Am. Dec. 610). See, also, *Dedham Bank* v. *Everett Bank,* 177 Mass. 392 (59 N. E. 62: 83 Am. St. Rep. 286).

A bank is presumed to know the signatures of its depositors and the condition of their accounts and credits, and in those cases where the name of the maker has been forged to the instrument, and the check or draft has in due course finally been presented to and accepted and paid by the drawee, the courts have in numerous instances refused a recovery from the indorser. *Deposit Bank* v. *Fayette National Bank,* 90 Ky. 10 (13 S. W. 339: 7 L. R. A. 849) ; *National Bank* v. *State Bank,* 107 Iowa 327 (77 N. W. 1045: 44 L. R. A. 131) ; *Howard* v. *Mississippi Val. Bank,* 28 La. Ann. 727 (26 Am. Rep. 105) ; *Com. & Farmers' Nat. Bank* v. *Baltimore First Nat. Bank,* 30 Md. 11 (96 Am. Dec. 554) ; *Salt Springs Bank* v. *Syracuse Sav. Bank,* 62 Barb. (N. Y.) 101; *Nat. Bank Commonwealth* v. *Grocers' Nat. Bank,* 35 How. Prac. (N. Y.) 412; *Carthage First Nat. Bank* v. *Yost,* 58 Hun 606 (11 N. Y. Supp. 862) ; *Farmers' & Mer. Bank* v. *Bank of Rutherford,* 115 Tenn. 64 (88 S. W. 939: 112 Am. St. Rep. 817) ; *St. Albans Bank* v. *Farmers' & Mer. Bank,* 10 Vt. 141 (33 Am. Dec. 188) ; *Germania Bank* v. *Boutell,* 60 Minn. 189 (62 N. W. 327: 27 L. R. A. 635: 51 Am. St. Rep. 519).

There is a line of decisions that state the rule as follows: The drawee of a forged check, who has paid the same, may, upon discovery of the forgery, recover the money paid from the party who received it, even though the latter was a holder in due course, provided the latter has not been misled or prejudiced by the failure of the

drawee at the time of payment to detect the forgery, and that the burden of showing that he has been misled or prejudiced is upon the party claiming the right to retain the money. *Lisbon Bank* v. *Wyndmere Bank,* 15 N. D. 299 (108 N. W. 546) ; *Bank* v. *Bingham,* 30 Wash. 484 (71 Pac. 43: 60 L. R. A. 955) ; *American Express Co.* v. *Bank* (Okl.) (113 Pac. 711) 5 Cyc. 546, 547; *Danvers Bank* v. *Salem Bank,* 151 Mass. 280 (24 N. E. 44: 21 Am. St. Rep. 450) ; *Dedham Bank* v. *Everett Bank,* 177 Mass. 392 (59 N. E. 62: 83 Am. St. Rep. 286). Some cases have modified the old rule. Many of the text-writers advocate that in such cases there should be a recovery, for the reason that the money so paid was paid under mistake of fact, and that to allow a recovery is therefore the most equitable rule. 2 Parsons, Notes & Bills, 80; 2 Daniel (5 ed.) § 1656. The rule in *Price* v. *Neal,* 3 Burrows 1355, has been criticised as inequitable and fundamentally wrong (2 Morse, Bank & Banking, § 464) ; it is said to be harsh and against the great rule that money paid by mistake may be recovered. 2 Bolles, Modern Law of Banking, 721. In the divergent opinions in *Germania Bank* v. *Boutell,* 60 Minn. 189 (62 N. W. 327: 27 L. R. A. 635: 51 Am. St. Rep. 519), the different doctrines are said to be well stated in the dissenting opinion, in which we note that Mr. Justice CANTY, favoring the so-called modern rule, remarks: "I concede that it is good public policy to hold that a banker should know the signature of his depositor. It tends to greater vigilance on the part of the banker, and more prompt discovery of the forgery, which makes the business of forgery more dangerous and less successful." But the learned justice affirms that this should not overturn and exclude other well-established principles applicable thereto.

We have noticed these authorities in a general way for the purpose, among others, of considering their effect upon legislation. On account of a confusion of ideas upon this and other questions of similar nature, and

realizing that in modern commerce the coin of the country is supplemented and aided by means of drafts, checks, and other commercial paper, the legislatures of more than three-fourths of our states, in an endeavor to have a uniform law in this respect, within the past few years have enacted a "negotiable instruments" law. Ours was adopted in 1899. See Section 5834, L. O. L., *et seq.*

1-3. The plaintiff in substance claims to be a holder in due course of the checks in question, which defendant had purchased in good faith and indorsed, and promptly presented to the plaintiff bank for payment, and they were honored and paid by plaintiff, and that such payments were under a mistake of fact. "If an implied warranty of genuineness accompanies the unrestricted indorsement or transfer of any negotiable instrument, it is an assurance to the drawee of its genuineness in all respects, save that of the name of the drawer alone, with which knowledge the drawee is charged." *Bank* v. *Bank,* 139 Cal. 564 (73 Pac. 456: 63 L. R. A. 245: 96 Am. St. Rep. 169, 175). The doctrine that a bank is bound to know the signature of its customer has been applied very strictly by the United States Supreme Court. 2 Daniel (5 ed.) § 1656. It should be remembered, however, that the party holding such a check should in no way contribute to the success of the fraud. If so, he would certainly not be a holder in due course. 2 Daniel (5 ed.) § 1657. See, also, note on page 896 to the case of *People's Bank* v. *Franklin Bank,* 17 Am. St. Rep. 884. A check is in the nature of a bill of exchange, and treated as such. *Neal* v. *Coburn,* 92 Me. 139 (42 Atl. 348: 69 Am. St. Rep. 495).

The sections of our negotiable instruments law, bearing upon the question involved, provide as follows:

Section 5856, L. O. L.: "Where a signature is forged, or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge

therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

Section 5885, L. O. L., states that: "A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." This definition does not embrace the case of a drawee.

Section 5899, L. O. L.: "Every indorser who indorses without qualification warrants to all subsequent holders in due course (1) the matters and things mentioned in subdivisions 1, 2, and 3 of the next preceding section [that the instrument is genuine and in all respects what it purports to be]; and (2) that the instrument is at the time of his indorsement valid and subsisting. And, in addition, he engages that, on due presentment, it shall be accepted or paid, or both, as the case may be, according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder or to any subsequent indorser who may be compelled to pay it."

Section 5965, L. O. L.: "The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promise by any other means than the payment of money."

Section 6020, L. O. L.: "Where a check is certified by the bank on which it is drawn, the certification is equivalent to an acceptance."

Section 6021, L. O. L.: "Where the holder of a check procures it to be accepted or certified, the drawer and all indorsers are discharged from liability thereon."

Section 6025, L. O. L.: "In any case not provided for in this act the rules of the law merchants shall govern."

4. When the defendant bank, which was a holder in due course, presented these checks to the plaintiff bank, the drawee, and they were honored, accepted, and paid, the prior indorsers were thereby discharged from further liability. The checks when so paid had run their course; they were no longer checks within the meaning of the negotiable instruments law, but only canceled vouchers; and the plaintiff was not a holder thereof in due course. *St. Louis Bank* v. *German American Bank* (Mo. App.), 127 S. W. 434; *Riverside Bank* v. *Shenandoah Bank*, 74 Fed. 276 (20 C. C. A. 181); *Neal* v. *Coburn*, 92 Me. 139 (42 Atl. 348: 69 Am. St. Rep. 495); *Farmers' & Merchants' Bank* v. *Rutherford Bank*, 115 Tenn. 64 (88 S. W. 939: 112 Am. St. Rep. 817).

5. The payment of a bill or check by the drawee amounts to more than an acceptance. The rule, holding that such a payment has all the efficacy of an acceptance, is founded upon the principle that the greater includes the less. *Bank* v. *Bank*, 141 Mo. App. 719 (125 S. W. 513); *Neal* v. *Coburn*, 92 Me. 139 (42 Atl. 348: 69 Am. St. Rep. 495). In *Bank* v. *Bank*, 109 Mo. App. 665 (83 S. W. 537), Mr. Justice BROADDUS, answering the argument that absolute payment was not an acceptance, said: "An acceptance binds the acceptor to pay the bill, and he cannot be heard to deny that he has funds in his hands for the purpose. A payment of the bill is more than an acceptance, for the one is an obligation to pay; the other a discharge of the indebtedness represented by such bill. If the one concludes the drawee, it is inconceivable why the other would not." Under the provision in Section 6021, L. O. L., that, where the holder of a check procures it to be accepted or certified, the indorsers are discharged from liability, the plaintiff, when it paid the checks in question, precluded itself from setting up that the check was a forgery on any want of authority of the person affixing the signature it purported to bear, within the meaning of Section 5856, L. O. L. The following cases,

in which the negotiable instruments law is applied, sustain this view: *Bank of Com.* v. *Mech. Nat. Bank*, 148 Mo. App. 1 (127 S. W. 429) ; *Title Guarantee & T. Co.* v. *Haven*, 126 App. Div. 802 (111 N. Y. Sup. 305) ; *Bank of Rolla* v. *Salem Bank*, 141 Mo. App. 719 (125 S. W. 513) ; *Farmers' & Mer. Bank* v. *Rutherford Bank*, 115 Tenn. 64 (88 S. W. 939: 112 Am. St. Rep. 817). In the case of *Title Guarantee & T. Co.* v. *Haven*, 126 App. Div. 802 (111 N. Y. Supp. 305), Mr. Justice INGRAHAM, in considering sections of the negotiable instruments similar to those quoted from our statute, construed them as making it conclusive upon the drawee, after acceptance, that the note was genuine and all prior indorsements assured.

6. Under our negotiable instruments law, as well as by the weight of judicial authority, we think that where a bank, as the plaintiff, being the drawee of a bill of exchange or check drawn upon it by one of its depositors, pays the bill or check to a holder thereof in due course (as the defendant, who has in no way contributed to the fraud, and is not guilty of negligence in the matter), and it is afterward ascertained that the signature to the bill or check is a forgery, the bank making such payment cannot recover the money from such holder. A case of this kind is an exception to the general rule that money paid under a mistake of fact may be recovered.

There was no error in the judgment of the lower court, sustaining the demurrer, and it is affirmed.

MR. CHIEF JUSTICE EAKIN did not sit in this case, and took no part in its decision.    AFFIRMED.