LIBERTY TRUST COMPANY

*v.*

WILLIAM J. HAGGERTY et al.

[Decided April 14th, 1921.]

1. The payee of a check has no legal right to exact payment on it by the bank on which it is drawn. The check does not constitute a contract between the bank and the payee and the bank has the right to elect whether to pay the check or not.

2. Payment of a check by a bank on which the check is drawn, under the mistaken belief that the maker of the check has sufficient funds to his credit, is a finality and the bank cannot recover from an innocent payee of the check the amount so paid.

3. A bank is charged with knowledge of the state of its customer's account on which a check is drawn when it makes an election whether to pay the check or not, and the fact that the account appeared to be good when actually it was not is immaterial, so that a bank whose bookkeeper falsified an account on which checks were drawn is liable for the acts of its bookkeeper as against an innocent holder of the checks to whom the bank had paid the amounts they called for and cannot recover such amounts from such holder on any theory that a trust should be declared in the bank's favor in the amounts so paid.

---

On bill, &c.

*Messrs. McCarter & English,* for the complainant.

*Messrs. Lum, Tamblyn & Colyer,* for the defendant Alfred P. Mayhew.

*Mr. David Bobker,* for the defendant Frederick R. Lehlbach, trustee.

FIELDER, V. C.

The proofs show that the defendant Haggerty was conducting a sham importing business in the city of Newark, his real purpose being to obtain money from others, ostensibly for investment in his business, or on personal loans on his promise of repayment with interest at a high rate. Complainant is a trust company doing a banking business, with whom Haggerty kept a checking bank account. He induced a bookkeeper in complainant's employ to so manipulate the books of the bank that checks drawn on the bank by Haggerty were honored and paid out of an apparent balance to Haggerty's credit, when in fact he had insufficient funds to meet his checks. The first false bookkeeping entry in Haggerty's account appears under date of July 24th, 1918, and not again until August 14th, 1918, from which latter date to on or about December 9th, 1918, the false entries occur nearly every day, and by means of the conspiracy between Haggerty and the bookkeeper, the former succeeded in obtaining on his overdrafts a total of nearly $53,000 of the bank's funds. The falsification of Haggerty's account was accidentally discovered by one of the bank officials on December 9th, 1918, and Haggerty was arrested the following day. A petition in bankruptcy was filed against Haggerty December 20th, 1918, and he was duly adjudged a bankrupt and a trustee in bankruptcy was appointed. The total amount realized on his assets was about $9,500, and upward of $150,000 in claims have been filed with his trustee.

The defendant Mayhew entered Haggerty's employ about May 1st, 1918. Shortly prior to that date he had been attracted by the inducements held out by Haggerty and had made loans to him at usurious interest rates. Subsequent to the date of his

employment, Mayhew continued to make loans to Haggerty on the latter's promissory notes, receiving from time to time payments of interest at rates which ran from twenty per cent. to forty per cent. per annum, and partial payments on principal. These payments of principal and interest were made by Haggerty's checks to the order of Mayhew, drawn on and honored by complainant during the time complainant's bookkeeper was engaged in falsifying Haggerty's account and the amount paid by complainant on these checks, against which Haggerty actually had no funds to his credit, was $19,250.

Complainant seeks to have the money so received by Mayhew impressed with a trust in its favor, upon the theory that the checks given Mayhew by Haggerty and drawn on complainant, were not received by Mayhew as a *bona fide* holder for value, and that they were not effectual to pass title to Mayhew of money stolen by Haggerty from complainant. In the event that Mayhew should not be required to account for such money directly to complainant, the complainant and the trustee in bankruptcy contend that at the time of such payments, Haggerty was insolvent and that Mayhew had reasonable cause to believe that he was insolvent, and that he (Mayhew) was being preferred, and because all the payments to Mayhew were made within four months before the filing of the petition in bankruptcy, they must be repaid to the trustee. Complainant then insists that a trust on such funds should be declared in its favor, for the reason that the bankrupt's estate should not be permitted to profit by the crime of the bankrupt.

There seems to be no doubt that Haggerty was insolvent at the time he made the payments on account of his indebtedness to Mayhew, but my conclusion from the evidence is that Mayhew was not aware of that fact, and had no reasonable cause to believe that he was being preferred as a creditor, and therefore the payments made to Mayhew are not voidable under the Federal Bankruptcy act. I am also satisfied that Mayhew had no reason to believe that Haggerty's bank account was being falsified and that Haggerty's checks on complainant to Mayhew's order were paid with money Haggerty was stealing from complainant. Haggerty's checks came to Mayhew as payments on account of

principal and interest due on Haggerty's promissory notes which evidenced Mayhew's loans to Haggerty. On receiving these checks, Mayhew became a *bona fide* holder for value. *Comp. Stat. p. 3738 § 25.* As the holder of these checks, Mayhew had no legal right to exact payment on them from complainant, because they did not constitute a contract between complainant and Mayhew and complainant had the right to determine whether to pay them or not. *Comp. Stat. p. 3756 § 189; Creveling* v. *Bloomsbury National Bank, 46 N. J. Law 255; National Bank of New Jersey* v. *Berrall, 70 N. J. Law 757.* In making its election whether to pay or not, complainant was bound to know the state of its account with Haggerty. The fact that his account appeared to be good when actually it was not is immaterial. Complainant placed its bookkeeper in a position where he had the opportunity to falsify the account and it must be held accountable for his acts as against an innocent third party who presented checks received in the ordinary course of business. Having exercised its option to pay or not to pay by honoring the checks, complainant cannot recover the money back from the payee. This is under the general rule that payment of a check by a bank upon which it is drawn, under the mistaken belief that the maker of the check had sufficient funds to his credit to pay the check, is a finality and the bank cannot recover from the payee of the check the amount so paid. One of three reasons, and sometimes all three reasons, have been assigned for the rule —*first,* because there is no privity between the payee and the bank; *second,* because the bank always has the means of knowing the state of the depositor's account by an examination of its books, and therefore the payment is not a mistake within the meaning of the general rule which permits the recovery of money paid under a mistake of fact, and *third,* because to permit the bank to repudiate the payment would destroy the certainty that must pertain to commercial transactions of this sort and give way to the uncertainty, delay and annoyance which would result if the bank could at some future time call on the payee for the return of money paid him on a check. *National Bank of New Jersey* v. *Berrall, supra; 23 L. R. A. (N. S.) 1092; 33 L. R. A. (N. S.) 1023.* So, it has been held, that the cer-

tification of a check by a bank upon the mistaken belief that the drawer had sufficient funds to his credit, when in fact the apparent credit was the result of the deposit of a forged check to the credit of the drawer's account, will not excuse the bank from paying the certified check (*Fidelity Trust Co.* v. *Baker, 60 N. J. Eq. 170*), and it has also been held that where a bank official having authority to certify checks, certified one for an amount which he knew to be in excess of the drawer's account, the effect of the certification is payment, precisely as if the bank had paid the money on it instead of making a certificate of its being good and the bank is estopped from denying that it has sufficient funds with which to pay the check. *State* v. *Scarlett, 91 N. J. Law 200; 2 A. L. R. 86.* And it is the rule that a person receiving stolen money innocently in due course of business, in payment of a pre-existing debt, is a holder for value as against the former owner. *Fidelity Trust Co.* v. *Baker, 60 N. J. Eq. 170, 173; 25 L. R. A. (N. S.) 631; L. R. A. 1917 A, 704, 707.*

All the checks given by Haggerty to Mayhew, save one, were deposited by Mayhew in his bank under a general endorsement and were paid by complainant to Mayhew's bank. It might be argued that when Mayhew deposited the checks in his bank, the amount thereof was credited to him; that the money so credited was the money of his bank; that the transaction was, in effect, a sale of negotiable paper by Mayhew to his bank; that the money complainant afterward paid was paid to Mayhew's bank and not to Mayhew, and that the right to recover money paid by mistake exists only as against the party to whom the payment was made. But this question of privity between the parties to this action was not raised and has not been considered.

I shall advise a decree that complainant's bill be dismissed.