By a consent order entered April 3d 1933, a reference was made to the late Mr. Justice Minturn, as one of the special masters of this court, to take testimony and report thereon what decree should be made and entered herein, pursuant *Page 250 
to which he has filed his report to which the interpleader and defendant banks have interposed the exceptions now urged against its confirmation.
The pertinent facts culminating in litigating the controversy in this court are: Based upon her asserted claim of $4,650, defendant Bessie Genden, on April 8th, 1932, caused a writ of attachment to issue out of the supreme court against one Martin E. Foyer, all of whose moneys, credits, rights and effects in the interpleader bank were thereupon attached by virtue thereof. Thereafter judgment for $4,729 was entered in her favor, which was followed by the issuance of a writ of execution and a subsequent levy upon all of the said judgment debtor's previously attached moneys, credits, rights and effects in the interpleader bank. A claim of property in and to the funds and credits thus levied upon having been filed by the defendant bank, defendant Genden instituted scire facias proceedings in the nature of a rule to show cause why said funds and credits should not be applied towards the payment of her execution, whereupon the interpleader bank filed its present bill of interpleader, with the result that the proceedings then pending at law were restrained, the defendants, as directed, filed their respective statements of claim, the aforementioned order of reference was made, and the report of the said special master, finding in favor of defendant Genden, eventually filed and excepted to.
Aside from those addressed to mere casual and incidental observations of the special master, all of the exceptions here urged revolve about and center upon two checks, in the sums of $3,700 and $4,500, respectively, purporting to have been signed and drawn by one Sarah G. Keenan upon her account in the defendant bank to the order of said Foyer, which he deposited to his account in the interpleader bank, and upon both of which checks her signature is claimed to have been forged.
It is here contended on behalf of the defendant bank that it is entitled to the $714, conceded by the interpleader bank as being the balance of the $3,700 check still remaining in Foyer's account with it; and it is further contended on *Page 251 
behalf of both the interpleader and defendant banks that Foyer, and hence defendant, Genden, is not entitled to the proceeds of the $4,500 check in question because, as claimed by them, it was a forgery, was never paid, and never was collected or cleared, and consequently the special master erred in finding and reporting to the contrary.
It is now firmly settled that the burden of sustaining exceptions to a master's report is upon the exceptant (NationalBank of Metropolis v. Sprague, 23 N.J. Eq. 81; Fish v.Harrison, 87 N.J. Eq. 103; affirmed, sub nom. Fish v. HarrisonMilling Co., 89 N.J. Eq. 212), and that this court will not disturb the master's conclusions upon factual questions submitted to him, unless it clearly and satisfactorily appears that he has erred in reaching them (Sinnickson v. Bruere, 9 N.J. Eq. 659), and this upon the principle that where he has had the opportunity to see and hear the witnesses, and thus better weigh their testimony, his conclusions will be entitled to great weight and respect, and, where supported by competent credible evidence, will not be set aside; even though there is a conflict of testimony. Izard v. Bodine, Ibid. 309; Clark v. Condit,21 N.J. Eq. 322; Van Ness v. Van Ness, 32 N.J. Eq. 669;Haulenbeck v. Cronkright, 23 N.J. Eq. 407; affirmed, 25 N.J. Eq. 513; Wilson v. Sandall, 92 N.J. Eq. 130; affirmed, Ibid.463.
From the undisputed evidence adduced, it clearly appears that Foyer, after having deposited the $3,700 check, thereafter, on March 5th, 1932, deposited the $4,500 check in the interpleader bank by which it was duly dispatched to its correspondent, The Marine Midland Trust Company of New York, which sent it through the New York Clearing House, there receiving due credit for it, and from whence said check, in due course, reached the defendant bank as a voucher against the Keenan account maintained with it. That the course thus pursued in the presentation and collection of the checks in question was proper and consistent with the established and recognized banking practices and custom was not here questioned, but on the contrary was abundantly borne out by the testimony of the officials of the very banks here *Page 252 
involved and from whose said representatives were also elicited the admissions that both of the checks in question had, in bank parlance, "cleared," that payment thereof had been received by the aforementioned correspondent bank, as was indicated by the latter's stamped endorsement thereon, and that the amount thereof had been, in each instance, actually deducted from the Keenan account by the defendant bank, the $4,500 check having been so deducted on March 7th, 1932, as was manifested by the certified transcript of the Keenan account which it had produced and introduced in evidence before the said special master. Based upon and consistent with evidence so cogent and convincing, the special master's conclusions, thus challenged must be confirmed and the exceptions interposed thereto overruled.
As further ground for setting aside the special master's report, exceptants strenuously urge the fact that all items, other than cash, deposited by Foyer in the interpleader bank, under his contract with it, were received and credited by it subject to final payment thereof, and hence it could, at any time before such final payment, charge back his account with any of such items, whether returned or not. Be that as it may, and conceding the force and effect of the rule that the deposit of negotiable instruments with a bank creates the relation of principal and agent between it and the depositor, nevertheless, in view of the finding in the instant case that the checks in question had actually "cleared," the rights of Foyer and the interpleader bank inter sese are determined, governed and controlled not by the contractual provisions or rule referred to, but rather by the well established principle that the relation between the bank and such depositor is converted into that of debtor and creditor immediately upon the payment or clearance of the item deposited by him with it. Jefferson County SavingsBank v. Hendrix, 147 Ala. 670; 39 So. Rep. 295; 1 L.R.A.
(N.S.) 246.
Based upon the general and almost universally accepted rule that ordinarily permits the recovery of money paid under a mistake of fact, defendant bank vigorously contends that it should be permitted to recover the proceeds of the $4,500 *Page 253 
check, as well as the $714 remaining of the $3,700 check, both of which it claims to have paid out because of its mistake as to the genuineness of the maker's signature. But of almost equal antiquity with this rule itself, is the exception now firmly engrafted upon it whereby transactions, such as the one under consideration, are excluded from its operation and by which the bank is denied the right to retrieve from a bona fide holder the money paid by it to him on a forged check or other instrument. A bank upon which a negotiable instrument is drawn must, at its peril ascertain and satisfy itself as to the genuineness of the maker's or acceptor's signature thereon, and upon payment thereof to or for the account of the bona fide
holder thereof is concluded by its act and estopped from repudiating the instrument or recovering the money so paid out thereunder. National Bank of New Jersey v. Berrall,70 N.J. Law 757; Dedham National Bank v. Everett National Bank,177 Mass. 392; 59 N.E. Rep. 62; Murphy v. Metropolitan NationalBank, 191 Mass. 159; 77 N.E. Rep. 693; Pennington County Bank v.First State Bank of Moorehead, 110 Minn. 263; 125 N.W. Rep. 119;26 L.R.A. (N.S.) 849; National Park Bank of New York v.Ninth National Bank of New York, 46 N.Y. 77; First National Bankof Chicago v. Northwestern National Bank of Chicago, 152 Ill. 296; 26 L.R.A. 289; Bank of the United States v. Bank of theState of Georgia, 10 Wheat. 333; 6 L.Ed. (U.S.) 334; Neal v.Coburn, 92 Me. 139; 42 Atl. Rep. 348. The reason underlying this rule is to be found in the fact that a bank upon which a check or other instrument is drawn has, or is presumed to have, both the knowledge and means of ascertaining and determining for itself the genuineness of the maker's or acceptor's signature, while its bona fide holder may be, and often is, wholly without such knowledge or means. It is this unequality of footing upon which such a holder and the bank stand that furnishes the justification for the evolution and existence of the rule.
Inasmuch as there was ample plausible evidence from which the special master could and did find that Foyer was a bona fide
holder for value of the checks in question, the defendant *Page 254 
bank, by reason of its payment of said checks in due course, is now precluded from repudiating the genuineness of the maker's signature and recovering from Foyer or the interpleader bank the amounts paid out thereunder. Liberty Trust Co. v. Haggerty,92 N.J. Eq. 609; affirmed, 93 N.J. Eq. 197.
The exceptions will be overruled, the special master's report will be confirmed and a decree will be advised awarding the $714 and the proceeds of the $4,500 check to defendant Bessie Genden. *Page 255