## COMMERCIAL AND SAVINGS BANK COMPANY *v.* CITIZENS NATIONAL BANK.

[No. 9,658. Filed November 8, 1918.]

1. BANKS AND BANKING.—*Forged Check.—Payment to Bona Fide Holder.—Recovery.—*Where a check purporting to have been drawn by a depositor is presented to a bank by a *bona fide* holder for value and without fault, and is paid by the bank, it cannot, if it subsequently discovers that the check is forged, recover the payment so made. p. 423.

2. BANKS AND BANKING.—*Forged Check.—Collection by Bank.— Rights Between Banks.—*Where a check was presented to a bank for payment by a stranger, and the bank, though not actually paying the check stamped "Paid" on the face thereof, and on the

back "Pay any Bank or Banker. All previous endorsements guaranteed," attaching a slip, "We enclose for collection and return," and sent the check to drawee bank which paid it, and, subsequently after the forwarding bank had paid the proceeds to its customer, the drawee discovered that the depositor's signature and indorsement were forged, the drawee bank could not recover the proceeds of the check from the forwarding bank, since the negligence of both banks contributed to the loss and, in such a case, the loss will be allowed to remain where it has been placed by the course of business. p. 437.

From Johnson Circuit Court; *William Deupree,* Judge.

Action by the Commercial and Savings Bank Company of Bellefontaine, Ohio, against the Citizens' National Bank of Franklin, Indiana. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Miller, Barnett & Barnett,* for appellant.
*White & Owens,* for appellee.

Felt, P. J.—Appellant, the Commercial and Savings Bank of Bellefontaine, Ohio, brought this suit against appellee, the Citizens' National Bank, of Franklin, Indiana, to recover the amount paid by it to appellee on an alleged forged check.

The complaint was in four paragraphs, to which an answer was filed in six paragraphs.

Demurrers for insufficiency of facts alleged to state a cause of action were filed and overruled to each paragraph of the complaint. Demurrers for insufficiency of the facts alleged to constitute a defense to the cause of action stated in the complaint were filed to each paragraph of the answer, except the first, which was a general denial. Each of such demurrers were also overruled. Replies in general denial were filed to each paragraph of the special answers.

MAY TERM, 1918. 419

Commercial, etc., Bank Co. *v.* Citizens Nat. Bank—68 Ind. App. 417.

The parties made an agreement as to the evidence in the case. The court found for appellee and rendered judgment accordingly.

Appellant's motion for a new trial was overruled, and it has assigned as errors relied on for reversal (1) the overruling of the demurrer to the second, third, fourth, fifth and sixth paragraphs of answer and (2) the overruling of the motion for a new trial. A new trial was asked on the ground that the decision is not sustained by sufficient evidence and that such decision is contrary to law.

Appellee contends that no question is duly presented by appellant's brief under the rules of the court, because the pleadings are not set out in accordance with such rules, and because under points and authorities only abstract propositions of law are stated without being specifically applied to any particular question presented by the record.

The briefs are subject to criticism, but, considering them in their entirety, we are able to ascertain the principal questions presented by the issues and relied on for reversal, as they arise under the motion for a new trial, and shall consider the same from the standpoint of the sufficiency of the evidence to sustain the finding and judgment of the court.

The substance of the evidence, as far as material, is as follows: Appellant was a banking corporation doing business in the State of Ohio, and appellee was a similar corporation doing business in the State of Indiana. On October 11, 1912, appellant received from appellee, through the United States mail, a check, which was as follows:

"Bellefontaine, Ohio, Sept. 29, 1912.
"The Commercial & Savings Bank Co.
"Pay to the order of Myself.                    $320.00
Three hundred and twenty                    Dollars.
                              "W. H. Kellison."

The check was stamped on the face as paid by appellant on October 11, 1912, and was indorsed on the back "W. H. Kellison," and, also—

"Pay Any Bank or Banker.   All previous endorsements guaranteed.
    "Citizens' National Bank, Franklin, Indiana.
                    "J. H. Tarlton, Cashier."

That appellee sent with the check to appellant a slip reading as follows:

"The Citizens' National Bank
    Franklin, Indiana, Oct. 10, 1912.
"Commercial & Savings Bank Co.
    Bellefontaine, Ohio.
"We enclose for collection and return, Items marked X no protest.
Report by number.
No. on Amount.
X You $320.00                    Respectfully,
                    O. C. Dunn, Cashier."

The name of "W. H. Kellison" as maker and indorser of said check was a forgery.  Appellant, relying upon the guaranty of appellee, did on October 11, 1912, pay appellee the amount of said check, less its charges of thirty cents, but at that time had no notice that the check had been forged, or that the indorsement by Kellison was a forgery, and in paying the same relied wholly upon the indorsement of appellee.   On October 16, 1912, appellant first discov-

ered that said check was a forgery, and thereupon notified appellee by mail of that fact, and requested the return of the money. On October 19, 1912, appellant again communicated with appellee by mail, in which reference is made to a conversation over the telephone, and mention is made that the letter of October 16 did not reach appellee. In the letter dated October 19, it is stated that the check had been forged by a negro who was then in jail at Anderson, Indiana. Appellant also inclosed the check and asked appellee to remit the amount previously received from appellant in payment thereof. On October 22, 1912, appellee returned the check by mail to appellant, and informed the latter that the check had been presented to it for payment; that the bank refused to pay the same, but took it for collection; that the check was thereupon sent direct to appellant for collection, was accepted by it as genuine, and a draft was sent appellee for the amount, less charges for collection; that it is "presumed a banker knows the genuineness of his customers' checks before payment and we disclaim any further responsibility in the matter."

The agreement as to the evidence further shows that on October 10, 1912, a negro, who was a stranger to appellee, presented the check to the bank at Franklin, Indiana, for payment, and payment was refused; that appellee did not know the negro, but the check was taken for collection, and after it was collected by appellant and the amount sent to appellee, it paid the same to the man who had so presented the check as aforesaid, who falsely represented himself to be W. H. Kellison; that it did not receive notice of the forgery until after the money had been so paid, and did not then know where said negro was, nor have any knowl-

edge of his location until informed by appellant's letter of October 19 that he was in jail in Anderson; that said negro represented himself to be W. H. Kellison, but appellee did not know W. H. Kellison nor the negro who so represented himself to be Kellison, nor did it know the handwriting of W. H. Kellison; that when appellee so indorsed the check as aforesaid and sent it to appellant it accompanied the same with a slip, a copy of which is above set out, and thereby intended to place upon appellant the whole responsibility of determining the genuineness and value of the check; that when appellee received the money collected by appellant on said check it believed appellant had ascertained the check to be genuine, and thereafter paid the money over to the presenter of the check as aforesaid; that when appellee refused in the first instance to cash the check, and offered to take the same for collection, said colored man showed no hesitancy or unwillingness, but readily assented thereto, and later on called and inquired if the bank had received payment on the check; that W. H. Kellison was a depositor in appellant's bank, but appellee had never known nor heard of him before the transaction in controversy; that appellant gave the check only ordinary examination before paying the same, and was at the time acquainted with the usual and customary method of banks in widely separated places in forwarding checks from the holding bank to the drawer bank, and knew that it is the usual and ordinary practice to send the same through a correspondent bank for collection and credit, by mail, each receiving bank in turn crediting the bank sending the check to it and charging the bank to which it is sent

with the amount thereof, and indorsing the check, all without charge to one another, and that such method is called forwarding "for collection and credit"; that in some instances, where prompt return is desired, the holding bank sends check by mail direct to the drawer bank for honor, and such plan is designated "for collection and return," and in such instances the drawer bank, if it honors the check, remits the amount by draft or otherwise by mail direct to the holder; that the forwarding of checks "for collection and return" as aforesaid is infrequent in proportion to those sent for "collection and credit," and in actual practice the checks so sent are not more than three or four out of 100 and this was the only transaction of the kind between appellant and appellee; that appellant was at the time familiar with the signature and handwriting of W. H. Kellison; that appellee has never received from said colored man or from any one the amount so paid him as aforesaid or any portion thereof.

Appellant asserts that it is entitled to recover in this case under the general proposition of law that money paid under a mistake of fact may be re-

1. covered by the person making such payment.

While there is no dispute as to such general principle or rule of law, and its application to many transactions, textwriters and courts have expressed widely different views as to how far the rule is applicable where drawees of bills and checks, and especially banks of deposit, are involved.

It is universally held that an exception to the general rule aforesaid obtains as to drawees of bills by which they are charged with knowledge of the signatures of the drawers of such instruments, and as a

general rule must bear the loss, if any, resulting from a failure on their part to detect forgeries until after payment has been made.

The principle underlying such rule or exception is applied to banks of deposit, and they are charged with the responsibility of knowing the signatures of their depositors. Where a check purporting to have been drawn by one of such depositors is presented to the bank by a *bona fide* holder thereof for value, and is paid by the bank, the latter cannot compel such holder to whom payment has been so made to repay the amount to it, if it subsequently discovers the check to have been forged. *First Nat. Bank of Crawfordsville* v. *First Nat. Bank of Lafayette* (1891), 4 Ind. App. 355, 360, 30 N. E. 808, 51 Am. St. 221; *Snodgrass* v. *Sweetser* (1896), 15 Ind. App. 682, 688, 44 N. E. 648; 5 R. C. L. §§77, 78, pp. 552-554; 3 R. C. L. §244, p. 615; 2 Daniel, Negotiable Instruments (6th ed.) §§1654a, 1655, 1655a, 1656, 1657; 2 Morse, Banks and Banking (4th ed.) §463; 8 C. J. §844, pp. 606-609; 7 C. J. §§416, 417, pp. 688, 689; *Price* v. *Neal* (1762), 3 Burr. 1354; *United States Bank* v. *Bank of Georgia* (1825), 10 Wheat. 333, 6 L. Ed. 334; *First Nat. Bank* v. *Bank of Wyndmere* (1906), 15 N. D. 299, 108 N. W. 546, 10 L. R. A. (N. S.) 49, and notes pp. 50-59; *Bank, etc.* v. *McDowell County Bank* (1909), 66 W. Va. 545, 66 S. E. 761, 36 L. R. A. (N. S.) 605; *State Bank* v. *Cumberland Savings, etc., Co.* (1915), 168 N. C. 605, 85 S. E. 5, L. R. A. 1915D 1138; *Neal* v. *Coburn* (1898), 92 Me. 139, 42 Atl. 348, 69 Am. St. 495; *Pennington County Bank* v. *First State Bank* (1910), 110 Minn. 263, 125 N. W. 119, 26 L. R. A. (N. S.) 849; *People's Bank* v. *Franklin Bank* (1889), 88 Tenn. 299, 12 S. W. 716, 6 L. R. A. 724, 17 Am. St. 884; *Commercial, etc., Bank* v. *First Nat. Bank* (1868), 30 Md. 11, 96 Am. Dec. 554.

The rule which protects a *bona fide* holder in his right to retain money paid by a drawee upon a bill or check to which the drawer's signature is subsequently ascertained to be forged was first announced by Lord Mansfield in *Price* v. *Neal, supra.* The case was followed by Justice Story in *United States Bank* v. *Bank of Georgia, supra,* and has generally been recognized and followed in this country, though with varying modifications and interpretations.

It has frequently been announced that this rule is founded on the supposed negligence of the bank in failing to detect the forgery and refuse payment. But there are several important reasons which have led to the adoption and application of the rule. Banks of deposit have superior advantages and facilities for knowing the signatures of their depositors and detecting forgeries. For this reason it has generally been recognized that the rule is especially applicable where the drawee is a bank of deposit, and the check purports to have been drawn upon it by one of its depositors. The question of public policy is also taken into account, and it is held that, as between a good-faith holder for value of a check purporting to have been drawn upon such bank by one of its depositors, the bank should be made the place of final settlement, where all prior mistakes or forgeries should be detected, settled, or corrected, once for all, and, if not then and there detected, payment by such bank to such holder should be treated as final, without recourse upon any such holder by the bank making payment under such circumstances.

The rule also tends to promote the security of depositors and the stability of banks, and should not be relaxed or ignored for trivial reasons or minor con-

siderations, but should be applied unless the facts and circumstances of the involved transaction bring it clearly within some established rule adopted and enforced to promote the ends of justice. *Bank, etc.* v. *McDowell County Bank, supra;* 5 R. C. L. 554, 555; *First Nat. Bank, etc.* v. *Marshalltown State Bank* (1899), 107 Iowa 327, 77 N. W. 1045, 44 L. R. A. 131; *Germania Bank* v. *Boutell* (1895), 60 Minn. 189, 62 N. W. 327, 27 L. R. A. 635, and notes, 51 Am. St. 519.

The foregoing rule as to drawees and banks of deposit has not been applied with uniformity by the different states. It is universally recognized where all the fault of a failure to detect a forgery may reasonably be laid upon the bank which has failed to detect a forgery of the name of one of its depositors who is himself without fault, where the loss would fall upon him if not borne by such bank, and likewise as against any *bona fide* holder for value of such check who is free from any fault or negligence contributing to the loss resulting from the forgery.

But where the holder of the check has been remiss in the discharge of some duty incumbent upon him, or has misled the payee bank by something done or omitted which fair dealing and commercial usage require of him in such transactions, the rule has been relaxed, and a recovery permitted under the general rule which authorizes a recovery of money paid out under a mistake of fact.

What is generally known as the negligence rule has been adopted in many jurisdictions, under which a recovery is authorized against the party whose fault or negligence was the proximate cause of the loss sustained by a failure to detect a forgery before payment of such check or other forged instrument.

In some jurisdictions the rule of responsibility of drawees and banks of deposit is strictly enforced in all instances, except those in which the holder of the check has knowledge of, or participates in, the fraud upon such drawee. 2 Daniel, Negotiable Instruments (6th ed.) §1657.

Where the negligence rule has been adopted, and the fault or negligence, which was the proximate cause of the loss resulting from a failure to detect a forgery before payment of the instrument, can be traced wholly to the bank of deposit or other drawee, or to the holder of the check, the rule is of easy application and the loss is placed upon the party so at fault. But where the facts show some negligence or failure of duty on the part of each, there is less uniformity in the application of the rule. Some courts place the loss upon the party first in fault in the transaction.

The weight of authority is to the effect that responsibility of the bank or drawee who pays such forged check, is absolute only in favor of one who has not by his own fault or negligence contributed to the success of the fraud, or by his conduct misled the bank, or in some way induced a sense of safety which reasonably may have caused such bank to lessen its vigilance by reliance upon such conduct. This court has heretofore recognized this principle. *First Nat. Bank of Crawfordsville* v. *First Nat. Bank of Lafayette, supra; Ind. Nat. Bank, etc.* v. *First Nat. Bank, etc.* (1893), 9 Ind. App. 185, 36 N. E. 382; 7 C. J. §417, pp. 688-691; *Ford & Co.* v. *People's Bank, etc.* (1906), 74 S. C. 180, 54 S. E. 204, 10 L. R. A. (N. S.), notes p. 63, 114 Am. St. 987; *Farmers Nat. Bank, etc.* v. *Farmers & Traders Bank, etc.* (1914), 159 Ky. 141, 166 S. W.

986, L. R. A. 1915A 77-82, 84; *Pennington County Bank* v. *First State Bank, supra; First Nat. Bank of Danvers* v. *First Nat. Bank of Salem* (1890), 151 Mass. 280, 24 N. E. 44, 21 Am. St. 450. In *Farmers Nat. Bank, etc.* v. *Farmers & Traders Bank, etc., supra,* the court, in referring to the above rule, said: "Where the parties are equally innocent the drawee is the loser."

The decisions are not in harmony as to the effect of payment by the drawee bank to a holder who has indorsed the check so paid. Where the indorsement is "for collection" or for "account of" it is generally held that it is notice to the drawee bank that the presenter of the bill or check is not the owner, and that such indorsement will not justify the drawee bank in relaxing its vigilance, but it must at its peril determine the genuineness of the signature purporting to be signed by one of its depositors. *First Nat. Bank, etc.* v. *First Nat. Bank, etc.* (1881), 76 Ind. 561, 40 Am. Rep. 261; *Commercial Nat. Bank* v. *Armstrong* (1893), 148 U. S. 50, 13 Sup. Ct. 533, 37 L. Ed. 363; *First Nat. Bank of Belmont* v. *First Nat. Bank of Barnesville* (1898), 58 Ohio St. 207, 50 N. E. 723, 41 L. R. A. 584, 65 Am. St. 748; *Farmers, etc., Bank* v. *Bank, etc.* (1905), 115 Tenn. 64, 88 S. W. 939, 112 Am. St. 817; *Dedham Nat. Bank* v. *Everett Nat. Bank* (1901), 177 Mass. 392, 59 N. E. 62, 83 Am. St. 286; *First Nat. Bank, etc.* v. *City Nat. Bank, etc.* (1902), 182 Mass. 130, 65 N. E. 24, 94 Am. St. 637; *Crocker, etc., Bank* v. *Nevada Bank* (1903), 139 Cal. 564, 73 Pac. 456, 63 L. R. A. 245, 96 Am. St. 169; 7 C. J. §421, pp. 692-695.

This court has heretofore applied the negligence rule to a transaction involving an indorsement of an

instrument "for collection." In the case of *First Nat. Bank of Crawfordsville* v. *First Nat. Bank of Lafayette, supra,* the view is expressed that such indorsement may tend to throw the drawee bank off its guard, and cause it to relax its vigilance, and thereby induce payment of a check or other forged instrument by the bank when, in the absence of such indorsement, the forgery might have been detected by the bank which made the payment. In that case the court was considering the sufficiency of an answer by the bank which had indorsed an instrument for collection and received payment thereof from the payee bank, through another bank, and afterwards ascertained the instrument to be a forgery, and sought to recover the money so paid by it from the bank which had so indorsed the instrument. In addition to the foregoing statements, the court indicates that the answer did not show that to compel payment would place the defendant in any worse situation than it would be in if payment were refused or a recovery denied. The instrument purported to be the obligation of a township, executed by its trustee, and the court held that it was not negotiable by the law merchant, and that its presentation and payment were not in all respects governed by the rules applicable to instruments of the latter class; also, that the averments of the answer on the question of notice of the discovery of the forgery were insufficient. The case lends credence to the proposition that an indorsement by a bank of an instrument "for collection" does not necessarily relieve such bank from liability in all cases where it is subsequently ascertained that the instrument had been forged, and the question of liability arises between the bank making such indorsement and the bank which accepts and

pays such check or other obligation. The case gives as the reason for the rule of responsibility of drawees and banks of deposit their supposed negligence in failing to detect forgeries.

This view, though frequently expressed by text-writers and in opinions of courts, is too narrow, and the tendency now is to adopt the broader and more substantial reasons above stated. Checks are in constant use in business transactions through banks, and the character and use of such instruments afford much stronger reason for the rule which makes drawees and banks of deposit responsible for knowing the signatures of drawers or depositors than obtains in the case of instruments of the class under discussion in *First Nat. Bank of Crawfordsville* v. *First Nat. Bank of Lafayette, supra.* That case does not, however, depart from the general rule which holds banks responsible for knowledge of the signatures of their depositors, but recognizes exceptions thereto where the other party is wholly, or in part, responsible for the failure to detect the forgery before payment of the forged instrument. If the decision in fourth appellate, *supra,* is construed as an authority holding that a bank indorsing an instrument for collection and sending it to the bank upon which it is drawn or at which it is payable thereby assumes all responsibility for detecting a forgery, where such instrument purports to be the check of a depositor of the bank to which it is sent, we are of the opinion that both the weight of authority and the better reason are against it, and that it should not be followed to that extent.

The weight of modern authority, where the negligence rule is invoked, is that responsibility falls

upon the party whose negligence or conduct is wholly responsible for the loss, and that as between a drawee bank and a *bona fide* holder of a check indorsed for collection and sent to such bank for collection and credit, or for return, if a loss results which must be borne by one or the other of such banks because the instrument is afterwards found to be a forgery, both having been at fault, the holder for so indorsing the check without further information to put the payee bank on guard, and the payee bank for failing to discharge the duty of detecting a forgery of the name of one of its depositors, the law will leave the loss resulting therefrom where the parties have placed it by their dealings, and will not come to the assistance of either as against the other because of his fault or negligence contributing to such loss.

In the case of *Bank, etc.* v. *McDowell County Bank, supra,* the court said: "By its conduct, the McDowell County Bank induced the Bank of Williamson to do what it refrained from doing itself, pay money to an unidentified stranger. In fact, it took the check for collection, instead of purchasing it, because the party claiming to be payee was unknown to it, and refused to pay him the money until it had collected the same. If it had told the Bank of Williamson the status of the matter, that bank would have been more cautious. It not only did not do this, but, on the contrary, endorsed the check as if it had been bought outright, and expressly guaranteed the genuineness of the forged endorsement, 'George Horner.' This was a representation to the Williamson bank that there was a George Horner, and that he was the payee, having right to the money, and had transferred that right to the bank, and, possibly, that he was good for $800.00 in case

the check should prove to be worthless. I am unable to perceive the reason or ground upon which it can be said that such a representation may not have induced action on the faith of it, and, was not dangerous to the party to whom it was made.

"But there is another element in the case. The Bank of Williamson was also negligent. It had no signature of its depositor in its possession or within its reach, in any form whatever, to enable it to make any investigation of the genuineness of the signature to the check. As we have shown, no recovery can be had, if both parties are without fault. Negligence or omission of duty, on the part of the first taker, causing, or likely to cause, injury to the drawee, is the circumstance that deprives the former of the benefit of the exemption of dealers in commercial paper from the operation of the general rule, allowing recovery of money paid under a mistake of fact. * * * The exemption rests upon the assumption of innocence in both parties. If both are at fault, as in this case, it seems to follow that neither, while claiming, or accorded, the benefit of the exception to the general rule, should be permitted to deny its protection to the other. It is an arbitrary rule of commercial law, and the reasoning which justifies it, when both parties are innocent, justifies it also, when both parties are at fault. It was the duty of the drawee to determine, at its peril, the genuineness of the signature of its depositor, and its sole right to demand reimbursement from the defendant rests upon technical fault in the latter. * * * Therefore, having been negligent itself, the plaintiff is not entitled to recover on the technical ground of negligence in the defendant."

In the foregoing case the court quotes extensively

from the case of *Vagliano Bros.* v. *Bank of England* (1889), L. R. 23 Q. B. Div. 243, 248, 251, decided by Lord Esher, where both litigants were shown to have been guilty of negligence contributing to the loss resulting from a forged instrument, and the court said: "The officials of the bank neglected this precaution and paid the bills over the counter to a man whom they did not know. This, in our opinion, was negligence on the part of the bank, which materially contributed to the frauds in question being successfully carried out by Glyka. This, we think, would prevent the bank from effectually relying on the defense of negligence of the plaintiff."

In the case of *Commercial, etc., Bank* v. *First Nat. Bank, supra,* it is said that: "The loss as between parties thus equally innocent and equally deceived, but where one is bound to know and act upon his knowledge, and the other has no means of knowledge, should be thrown upon the latter in exoneration of the former. * * * The safest rule for the commercial public, as well as that most consistent with justice, is to allow the loss to remain where by the course of business it has been placed."

Checks, as ordinarily drawn and used in business, are classed as inland bills of exchange, and, with certain exceptions and limitations, are governed by the same rules which prevail in relation to such bills of exchange.

Our Negotiable Instruments Act defines a check as a bill of exchange payable on demand and states that, "Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check." §9089c7 Burns 1914, Acts 1913 p. 120, §185; 5 R. C. L. §§2, 3, pp.

479-481; 2 Daniel, Negotiable Instruments (6th ed.) §§1651, 1652.

Daniel in his work on Negotiable Instruments, in speaking of the Negotiable Instrument Statute says that: "In the case of checks, it seems generally to be held that the states which have enacted the statute have adopted the rule announced in *Price* v. *Neal* * * * and under that rule, where a drawee bank pays a check to a *bona fide* holder, such drawee cannot recover the money back on discovering such check to be forgery." 2 Daniel, Negotiable Instruments (6th ed.) §1657; *First Nat. Bank* v. *Bank, etc.* (1911), 59 Ore. 388, 117 Pac. 293; *Title, etc., Trust Co.* v. *Haven* (1909), 196 N. Y. 487, 89 N. E. 1082, 1085, 25 L. R. A. (N. S.) 1308, 17 Ann. Cas. 1131. There are some exceptions to the general rule that an indorser of a negotiable instrument warrants its genuineness. An unrestricted indorsement indicating an absolute transfer and sale of the instrument warrants its genuineness. But it is generally held that the indorsement of a check or like instrument by one other than the payee of such instrument does not extend to the signature of the maker or drawer thereof, and as applied to a depositor of a bank, the latter is bound to know the signature of its customer, notwithstanding such indorsement. 1 Daniel, Negotiable Instruments (6th ed.) §§670, 671, 672. In *Bank, etc.* v. *McDowell County Bank, supra,* it is said: "In conformity with these principles, it is uniformly held that a bank endorsing a check, not drawn upon it, warrants the genuineness of all the preceding signatures endorsed on it, including that of the payee, but not that of the drawer. *First Nat'l Bank* v. *Northwestern Nat'l Bank*, 152 Ill. 296, (43 Am. St. Rep. 247); *Williams* v. *Tishomingo*

*Savings Inst.,* 57 Miss. 633; Story on Bills of Exchange, section 225; 2 Parsons on Bills & Notes 588.

"Such is the great weight of authority on the question presented. Only four cases holding the contrary have been found. * * * In so far as they allow the benefit of the exception under circumstances showing negligence or misconduct on the part of a bank purchasing, or taking for collection, and putting into circulation, as if it had been purchased, a check drawn upon another bank, they are wholly irreconcilable with the great weight of judicial opinion and decision, as well as variant from the spirit of the exception declared in *Price* v. *Neal* and the great number of subsequent decisions in which it has been observed. In the last two, circumstances were disclosed which tended to prove negligence on the part of the drawers, off-setting that on the part of purchasing banks. When both have been negligent, not merely unfortunate, no recovery can be had."

In *First Nat. Bank of Belmont* v. *First Nat. Bank of Barnesville, supra,* it is said: "It is urged that the Belmont bank having indorsed the check, thereby guaranteed that the signatures of the drawer and indorsers were genuine, and some cases are cited to that effect. *Peoples Bank* v. *Franklin Bank,* 88 Tenn., 299; 17 Am. St. Rep., 884; *First National Bank of Danvers* v. *First National Bank of Salem,* 151 Mass., 280; 21 Am. St. Rep. 450. Other cases hold, that an indorser does not guarantee that the name of the drawer is genuine, but that the drawee must determine that for himself, and at his own peril. *Germania Bank of Minneapolis* v. *Boutell,* 60 Minn., 189; 27 L. R. A., 635, and cases there cited. In the cases in which it has been held that the indorsement is a guar-

anty, to the effect that the name of the drawer is genuine, the indorsements were unrestricted, and therefore indicated an absolute transfer and sale of the paper. But when the indorsement is for collection only, as in this case, it indicates on its face, that the indorser remains the owner of the paper, and that his successive indorsees are only his agents for the sole purpose of collecting the paper, and remitting the proceeds to him. Such a restricted indorsement does not authorize a subsequent indorsee to negotiate the paper. His only power is to collect it, and the drawee bank is bound by the notice in the indorsement. Such an indorsement is not a guaranty that the name of the drawer is genuine, but only that the names of the indorsers then on the paper are genuine.''

In *Germania Bank, etc.* v. *Boutell, supra,* the Supreme Court of Minnesota said: ''It owed the plaintiff no duty to investigate as to the genuineness of the signature of its own customer, and the plaintiff had no right to assume that it had made such investigation. It seems to us that the same is true as to Boutell Bros. The distinction must be kept clearly in mind between their duty and responsibility to the defendant bank or any other *bona fide* indorsee of the check, and their duty and responsibility to the plaintiff bank, with reference to the genuineness of the signature of its own customer. By indorsing the check, Boutell Bros. undoubtedly guaranteed to the defendant bank the genuineness both of Osborne & Clark's signature and of Seymour's indorsement as the payee. * * * But upon the question of the genuineness of the signature of Osborne & Clark, the drawee's own customers, the case stands upon an entirely different footing. Not being the original payees of the check, the indorse-

· MAY TERM, 1918. 437

Commercial, etc., Bank Co. *v.* Citizens Nat. Bank—68 Ind. App. 417.

ment of Boutell Bros. constituted no guaranty or representation to the drawee that the signature of the drawer was genuine; and the plaintiff had no right to rely on it as such, or to assume that Boutell Bros. had investigated as to its genuineness. That was a matter which it devolved on the plaintiff to ascertain for itself when the check was presented."

In 2 Daniel, Negotiable Instruments (6th ed.) §1365, the author states that: "The distinction between the acknowledgement of the drawer's and of the indorser's signature is carried so far, that, if the bill be made payable to the drawer's own order, and indorsed by him, the acceptance is regarded as admitting the drawing only, and not the indorsement, although the name is the same, and they profess to be, and apparently are, written by the same party."

In 5 R. C. L. §76, pp. 551, 552, it is said: "It seems to be a settled rule of law that one who unrestrictedly indorses a check, for the purpose of transferring title thereto, impliedly warrants, by such act, that the instrument is genuine. * * * An indorsement of a check for collection does not guarantee the signatures of the prior endorsers. The indorsement of an indorser, using that word in its technical sense, imports a guaranty of previous signatures, because it is a transfer and sale; but an indorsement which is not made for the purpose of transfer is not an indorsement within the law merchant, and does not carry with it a guaranty of previous indorsements."

In the case at bar the Indiana bank took the proper precautionary measures at first by refusing to cash the check of an unidentified person. But by its 2. indorsement of the check it became in some measure responsible for the failure to detect

the forgery before payment of the check by the Ohio bank.

True, the slip accompanying the check, should be taken into account on the question of negligence, and appellant was not at liberty to wholly ignore it. It tended to indicate to appellant that the Indiana bank was not assuming responsibility in determining the genuineness of the signature of the drawer. But this fact could not entirely annul or change the probable effect of the indorsement guaranteeing all prior indorsements. When once the door is opened to a consideration of any conduct or negligence of the parties, other than fraud, in such transactions, fairness and justice require consideration of all that was done or omitted which could in any way affect the question to be determined. The indorsement of the check by the Indiana bank and the slip accompanying the same, considered together, should have called the Ohio bank's attention to the fact that the indorsement did not indicate an absolute sale and transfer of the check. This, we think, must be true independent of the rule above announced, that an indorsement of a check by a party other than the payee does not apply to the signature of the drawer of the check, by which rule alone appellant would be held negligent in failing to detect a forgery of the signature of one of its own customers. It would be an unsafe rule to hold that the things done or omitted by the Indiana bank relieved the Ohio bank from all responsibility in determining the genuineness of the signature purporting to be that of one of its depositors. By failing to detect the forgery it became absolutely responsible to its depositor, and its fault in that respect was in part, at least, responsible

for the loss that, on the facts of this case, must be borne by one or the other of such banks.

The facts make a case where the fault of both contributed to the loss, and under the law as above announced the decision of the trial court is sustained by sufficient evidence, and no error was committed in denying appellant's right to recover or in overruling the motion for a new trial. Judgment affirmed.

Caldwell, C. J., Ibach, Dausman, Batman and Hottel, JJ., concur.

Note.—Reported in 120 N. E. 670.