## MAITLAND, COPPELL & CO. v. LAREDO NAT. BANK.

(Circuit Court of Appeals, Fifth Circuit. January 22, 1924.)

No. 4168.

1. **Banks and banking ⊙═>148(1)—Drawee of check or draft charged with knowledge of drawer's signature.**

As a general rule a bank upon which a check is drawn is charged with knowledge of the drawer's signature, and must bear any loss resulting from failure to detect a forgery until after payment has been made.

2. **Banks and banking ⊙═>174—Bank receiving check for collection not held to high degree of care as to genuineness.**

A bank receiving a check for collection is not held to the same degree of care to ascertain its genuineness as one which discounts and pays the check in the first instance before it has been forwarded to the drawee.

3. **Banks and banking ⊙═>174—Collecting bank held not liable to drawee of forged checks.**

Checks purporting to be drawn on plaintiffs, a banking firm, in New York, by a Mexican correspondent, were accepted for collection by defendant bank in Texas on indorsement of the supposed payee, indorsed by it for collection, and forwarded to its New York correspondent, and were paid by plaintiffs on presentation. Defendant paid out no money on the checks until advised of this payment by plaintiffs, after which it paid over the proceeds. *Held* that, in the absence of proof of negligence by defendant, it was not liable to plaintiffs on their claim that the checks were forgeries.

4. **Banks and banking ⊙═>174—Following general custom among banks tends to negative negligence of collecting bank.**

While a negligent custom is not a defense, following a general custom among banks near the Mexican border to accept for collection checks or New York exchange payable to strangers upon their identification by Mexican passports is presumably the exercise of due care.

In Error to the District Court of the United States for the Southern District of Texas; Joseph C. Hutcheson, Jr., Judge.

Action at law by Maitland, Coppell & Co. against the Laredo National Bank. Judgment for defendant, and plaintiffs bring error. Affirmed.

E. F. Smith, of Houston, Tex. (Dan W. Jackson and Baker, Botts, Parker & Garwood, all of Houston, Tex., on the brief), for plaintiff in error.

William Aubrey, of San Antonio, Tex. (A. Winslow and Hamilton & Phelps, all of Laredo, Tex., on the brief), for defendant in error.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

---

⊙═>For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

BRYAN, Circuit Judge. This is a suit to recover back $60,000 paid out by a bank upon checks drawn upon it, which it is alleged were forged. The plaintiffs are partners, under the firm name of Maitland, Coppell & Co., and conduct a bank in the city of New York. In October, 1921, the Tampico branch of the Banco Nacional de Mexico, located at Tampico, Mexico, was and for a long time had been a correspondent bank of the plaintiffs, and was accustomed to issue its checks upon the plaintiffs upon forms supplied by them. These blank checks were kept under lock and key, and were taken out only when occasion arose for drawing upon the plaintiffs. It was the custom of the Mexican branch bank, whenever it issued checks upon the plaintiffs, immediately to send letters of advice, and of the plaintiffs, before paying any such checks, to receive such letters of advice. However, about October 5, a plan was adopted of indicating by secret code numbers that checks were genuine, and thereafter the plaintiffs sometimes paid checks bearing such secret code numbers without first receiving letters of advice. October 3, two checks, one for $20,000 and one for $15,000, purport to have been issued by the Mexican branch bank upon the plaintiffs, payable to the order of Manuel J. Espinosa, and two letters of advice purport to have been signed and sent by that bank to the plaintiffs at New York.

October 5, or two days later, a person representing himself to be Manuel J. Espinosa presented these two checks to the Laredo National Bank, defendant, at Laredo, Tex., on the Mexican border, a distance of 300 or 400 miles from Tampico. He produced a passport which contained his signature and photograph. Defendant inquired of him as to his business in Texas, and was told by him that he was about to become engaged on a large scale in the purchase and shipment of cattle to Mexico. He indorsed the checks and signed an identification card, and these signatures corresponded to the signature on the passport. The defendant then accepted the checks for collection, indorsed them "Pay to the order of any bank, banker or trust company. Previous indorsements guaranteed," and sent them to its New York correspondent, the National City Bank, at the same time requesting information by telegram whether the checks were paid by the plaintiffs, and October 11 received a telegram from its correspondent that they had been paid. On October 13 a third check, dated October 11, for $25,000, purporting to have been drawn by the Mexican branch bank on the plaintiffs, and payable to the order of Manuel J. Espinosa, was deposited by the same person with the defendant, accepted for collection, and handled in the same manner as the first two checks. The defendant sent this check to the same correspondent in New York, and on October 17 received telegraphic advice that it had been paid by the plaintiffs. The petition alleges, and the evidence shows, that the defendant accepted the three checks for collection, and did not pay out any money on them until after it had learned that the checks had been honored by the plaintiffs. All of the money, except $74, was withdrawn during the month of October. The person who represented himself to be Manuel J. Espinosa registered at Nuevo Laredo on the Mexican side, and until he had drawn out the proceeds of the checks

was frequently in defendant's bank, and was seen and known by that name by a number of people. During October he purchased and shipped a carload of cattle to Mexico City, and this was known to the defendant.

It was the custom of the banks at Laredo to accept for collection checks or New York exchange payable to strangers upon the identification of such strangers by passports. When the first two checks were presented to the plaintiffs, they had received letters of advice from the Mexican branch bank, and the checks, appearing to be regular and in order, were paid. Plaintiffs' head cashier testified by deposition that the checks for $15,000 and $20,000 were paid in reliance upon the letters of advice, and that the check for $25,000 was paid on the faith of the secret code number appearing thereon. Coppell, one of the partners, testified that the check would not have been paid if he had known that the defendants relied on the passport for the identification of the payee; but this witness admits that the checks were not called to his attention until long after they were paid, and further that he had examined the cashier's deposition before the trial, and "knew all about it." November 28 the plaintiffs were notified by the Mexican branch bank that the three checks were forgeries, and they in turn wrote to the defendant, but not until after January 10, 1922, and then only that their information indicated that the indorsements were not genuine.

The inspector in charge of the United States Immigration Service at Laredo testified that identification cards were issued to persons living in Mexico within 40 miles of the Rio Grande river upon their entering the United States, and that all other persons coming into the United States from Mexico were required to have passports; that the Immigration Service kept records of both identification cards and passports, and that such records failed to disclose the issuance of an identification card to Manuel J. Espinosa, or the issuance of a passport to such person during the month of October, 1921; that Espinosa was quite a common name, and that the records disclosed that numerous passports had been issued to persons giving their names as Manuel Espinosa. The defendant did not make an examination of these records.

The only conflict in the evidence is upon the question whether the checks and letters of advice are forgeries or are genuine. The checks were upon the forms furnished by the plaintiffs, and the letters of advice were upon stationery of the Mexican branch bank. The two officers, who signed both, testified that their names had been forged both to the checks and to the letters of advice; while, on the other hand, witnesses for the defendant, who claimed to be experts on handwriting, testified that in their opinion the signatures to the checks were genuine. The letters of advice were not produced or offered in evidence. At the close of the evidence the court directed a verdict and entered judgment thereon for the defendant. The plaintiffs assign error, and contend that there was sufficient evidence of defendant's negligence to carry the case to the jury.

[1] A bank, upon which a check is drawn, is charged with knowledge of the drawer's signature, and must bear any loss resulting from

failure to detect a forgery until after payment has been made. Price v. Neal, 3 Burr. 1355; Bank of United States v. Bank of Georgia, 10 Wheat. 333, 6 L. Ed. 334; United States v. Chase National Bank, 252 U. S. 485, 40 Sup. Ct. 361, 64 L. Ed. 675, 10 A. L. R. 1401. This is the general rule under the law merchant, and it had been adopted by section 62 of the Negotiable Instruments Law, which is in force in both Texas and New York. The plaintiffs contend that the rule is absolute only in favor of one who has not by his own fault or negligence misled the drawee, and that, where negligence is shown, the drawee of a check is not precluded from recovery from one who took it under circumstances of suspicion, and without proper precaution. In the cases cited by the plaintiffs, the banks, which were held liable by reason of their indorsements of forged checks, discounted them and paid out the money on them before they were presented to the banks upon which they were drawn.

[2] But in this case, the checks claimed to have been forged were not paid or discounted when presented to the defendant, but, on the contrary, the defendant took the precaution to send them on for collection, and did not pay out any proceeds until after the plaintiffs had recognized and thereby acknowledged that they were genuine. This the plaintiffs knew, because of the peculiar form of defendant's indorsement, as is made to appear by their petition. It appears reasonable to us that less diligence is to be expected of a bank which accepts a check for collection than of a bank which discounts or pays a check in the first instance, and before it has been sent forward to the drawee, and it has been so held in the well-considered case of Commercial & Savings Bank v. Citizens' National Bank of Franklin, 68 Ind. App. 417, 120 N. E. 670. The defendant paid out the proceeds of the checks, and changed its position, in reliance upon and only because of the action taken by the plaintiffs. It can therefore in good conscience refuse to make good the loss of the plaintiffs, which was not brought about by anything it had done or failed to do. The situation of a bank which buys or discounts a check is very different, because it does not rely on the action of the payee bank.

[3, 4] We are of opinion that the failure of the defendants to examine the records of the Immigration Service, in view of the fact that the check was being accepted for collection, does not constitute negligence. While it is true that a negligent custom is not a defense (Texas & Pacific Ry. Co. v. Behymer, 189 U. S. 468, 23 Sup. Ct. 622, 47 L. Ed. 905), yet evidence of custom among the banks at Laredo was admissible as tending to show the exercise of due care. For all that appears from the testimony, the payee of the check was the individual he represented himself to be, to the bank and to others. If an investigation of the records in the Immigration Service had been made, the defendant would not have been negligent in reaching the conclusion that a passport had been issued to the payee, since it appears that passports had been issued to many persons of his name. We do not think that the mere failure of such records to include the middle initial would have been sufficient to arouse suspicion. The plaintiffs themselves, at the time of the trial, do not appear to have been satisfied that the checks were forgeries. They had not released the Mexican bank, or

given it credit for the amounts of the checks, and even as late as January following the notice given to them in November preceding they notified the defendant only that according to their information the payee's indorsement had been forged. Conceding, therefore, that defendant's negligence was an issue in the case, our conclusion is that such negligence was not shown by the evidence.

The judgment is affirmed.