PAYROLL CHECK CASHING, Appellant (Defendant Below),

v.

NEW PALESTINE BANK, Appellee (Plaintiff Below).

LOU'S LIQUORS, Appellant (Defendant Below),

v.

NEW PALESTINE BANK, Appellee (Plaintiff Below).

No. 1–1079A280.

Court of Appeals of Indiana, First District.

March 25, 1980.

W. Brent Threlkeld, Martz & Threlkeld, Indianapolis, for appellants.

John S. Merlau, New Palestine, for appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant Payroll Check Cashing, Division of Lou's Liquors (PCC) appeals an adverse judgment in an action brought by New Palestine Bank (NPB) to recover $896.52, the aggregate amount of three forged checks.

## FACTS

The undisputed facts relevant to our review are as follows: A man purporting to be R. E. Merriman tendered three checks at PCC's place of business. Each check was drawn on the account of Allied Construction Company (Allied) in the amount of $298.84, was payable to the order of R. E. Merriman, and bore the signature of Steve Snider. PCC had previously cashed checks drawn on Allied's account and was in possession of a credit rating from NPB which reflected Allied's average monthly balance and the length of time the account had been maintained. PCC cashed the checks, then indorsed and deposited them in a People's Bank and Trust Company (People's). Thence, the checks went through the banking cycle and were presented to NPB for payment. At NPB, the checks were inspected and paid. The cancelled checks were sent to Allied in its monthly statement. Allied notified NPB that the three checks bore forged signatures and forwarded affidavits of forgery. NPB returned the checks to People's, but they were refused due to untimely notice. NPB commenced the present action against PCC, and received a judgment for the amount claimed. PCC appeals.

## ISSUES

Appellant PCC presents three allegations of error for our review. These include: (1) the trial court erred in refusing to grant PCC's motion to transfer to preferred venue; (2) the judgment was contrary to the evidence; and (3) the judgment was contrary to law. Inasmuch as we feel that the court committed reversible error in awarding judgment in favor of NPB, we will not consider the venue issue.

Essentially, the issue is this: As between NPB, the drawee-payor bank which made payment on checks bearing forged drawer's signatures, and PCC, which cashed the checks, who should bear the loss?

## DISCUSSION AND DECISION

Initially in our analysis we must determine whether to treat this as a forged drawer's signature (forged check) case or a forged indorsement case. This distinction is of great importance in assessing the liabilities between the innocent parties in a check passing scheme. The gist of the distinction is this: generally, the drawee bank is strictly liable to the customer drawer for payment of a forged check or a check bearing a forged indorsement. In the case of a forged indorsement, the drawee may sue back up the collection stream and recover against the party who took the check from the forger. In the case of a forged check, however, liability generally rests with the

drawee bank, unless certain warranties are broken.

■ We consider this to be a forged check case. Arguably, the checks bear a forged indorsement as well as a forged drawer's signature. There was no evidence, however, that the signature of R. E. Merriman, the named payee, was forged, despite NPB's groundless assertion in its brief that a forged indorsement and an imposter are involved in this case. In *Perini Corporation v. First National Bank of Habersham County,* (5th Cir. 1977) 553 F.2d 398, the machine-embossed facsimile signature of the drawer was forged. The sole proprietorship named as payee and the name of the person indorsing the checks were probably fictitious, although this was not established. The court there elected to treat the case as a forged check case, recognizing "the UCC's concern for finality and the probability that depositary banks, whatever their position in the usual forged indorsement case, have no unique opportunity to detect improper indorsements on checks that are themselves forged." 553 F.2d at 406. We agree with the analysis of the *Perini* court and shall consider this to be a forged check case.

■ The obstacle NPB must clear if it is to succeed in recovering against PCC is the final payment rule which has its roots in the 18th century case of *Price v. Neal,* (1762) 3 Burr. 1354, 97 Eng.Rep. 871. That case held that a drawee who pays an instrument bearing a forged drawer's signature is bound on his acceptance and cannot recover back his payment. Indiana has long followed this rule. In the pre-Uniform Commercial Code case of *Commercial and Savings Bank Company v. Citizens National Bank,* (1918) 68 Ind.App. 417, 424, 120 N.E. 670, 672, it was held that "[w]here a check purporting to have been drawn by one of . . . [the drawee bank's] depositors is presented to the bank by a *bona fide* holder thereof for value, and is paid by the bank, the latter cannot compel such holder to whom payment has been so made to repay the amount to it, if it subsequently discovers the check to have been forged." An exception was recognized where the party

accepting payment was negligent in failing to ascertain the identity of the person from whom it took the instrument.

■ The rule of *Price v. Neal, supra,* is maintained in the Code at Ind. Code 26–1–3–418. That section states:

"Except for recovery of bank payments as provided in the Article on Bank Deposits and Collections (Article 4) and except for liability for breach of warranty on presentment under the preceding section, payment or acceptance of any instrument is final in favor of a holder in due course, or a person who has in good faith changed his position in reliance on the payment."

Ind. Code 26–1–4–213 defines the points at which final payment by a payor bank is effected as follows, in relevant part:

"(1) An item is finally paid by a payor bank when the bank has done any of the following, whichever happens first:

\* \* \* \* \* \*

(c) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith . . .

\* \* \* \* \* \*

Upon a final payment under subparagraphs (b), (c) or (d) the payor bank shall be accountable for the amount of the item."

Unless the drawee can recover upon a warranty as prescribed by Ind. Code 26–1–4–207 or Ind. Code 26–1–3–417, its payment is final in favor of a holder in due course or a person who has in good faith changed his position in reliance on the payment.

The warranties made by a customer who obtains payment of an item are found at Ind. Code 26–1–4–207. PCC is a "customer" within the meaning of the Code. "Customer" is defined as "any person having an account with a bank or for whom a bank has agreed to collect items and includes a bank carrying an account with another bank." Ind. Code 26–1–4–104(1)(e). *See* J. White and R. Summers, Uniform Commercial Code 510 (1972).

The warranties extended by the parties in the bank collection process with which we are here concerned are found at Ind. Code 26–1–4–207(1) and (2), which read in pertinent part as follows:

"(1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that

(a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; and

(b) he has no knowledge that the signature of the maker or drawer is unauthorized, except that this warranty is not given by any customer or collecting bank that is a holder in due course and acts in good faith

\* \* \* \* \* \*

(iii) to an acceptor of an item if the holder in due course took the item after the acceptance or obtained the acceptance without knowledge that the drawer's signature was unauthorized; and

(c) the item has not been materially altered, except that this warranty is not given by any customer or collecting bank that is a holder in due course and acts in good faith

\* \* \* \* \* \*

(2) Each customer and collecting bank who transfers an item and receives a settlement or other consideration for it warrants to his transferee and to any subsequent collecting bank who takes the item in good faith that

(a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title and the transfer is otherwise rightful; and

(b) all signatures are genuine or authorized; and

. (c) the item has not been materially altered; and

(d) no defense of any party is good against him; and

(e) he has no knowledge of any insolvency proceeding instituted with respect to the maker or acceptor or the drawer of an unaccepted item. In addition each customer and collecting bank so transferring an item and receiving a settlement or other consideration engages that upon dishonor and any necessary notice of dishonor and protest he will take up the item."

■ The warranties of Ind. Code 26–1–4–207(2) do not run to payor banks. White and Summers, *supra*, 511. If the warranty of Ind. Code 26–1–4–207(2)(b), i.e., that all signatures are "genuine or authorized," were to run to payors, the doctrine of *Price v. Neal*, alive in the Code, would be obliterated. Further, the language "to his transferee and any subsequent collecting bank" would not include a payor, as a "collecting bank" does not include a payor bank. Ind. Code 26–1–4–105(d). *See also*, UCC § 4–207, Official Comment (4). Thus, the drawee bank making payment receives only the warranties of Ind. Code 26–1–4–207(1). The warranty against material alterations, Ind. Code 26–1–4–207(1)(c), is not applicable in the instant case.

■ Ind. Code 26–1–4–207(1)(a) provides the warranty of good title to an item, and this warranty is not broken upon the transfer of a check bearing a forged drawer's signature. "A warranty of title is nothing more than an assurance that no one has better title to the check than the warrantor, and therefore, that no one is in a position to claim title as against the warrantee, as the payee or other owner of a genuine check could do if his indorsement were forged." *Aetna Life and Casualty Co. v. Hampton State Bank*, (Tex.Civ.App. 1973), 497 S.W.2d 80, 84. The warranty of good title generally means that the item bears no forged indorsements. White and Summers, *supra*, 510. Thus the only party who could possibly claim title as against the warrantee NPB would be the ostensible payee Merriman, and this the latter has not done. We have already determined that this case is to be properly treated as a forged check case rather than a forged in-

dorsement case. There being no evidence whatsoever that Merriman's indorsement was forged, we find that the warranty of good title to the checks was not broken.

This leaves the Ind. Code 26–1–4–207(2)(b) warranty against knowledge of the unauthorized signatures. Relevant portions of the Indiana Comment to this section, in IC 1971, 26–1–4–207(b) (Burns Code Ed.), bear consideration:

"Subsection (1)(b) recasts the rule of *Price v. Neal* and its qualifications in terms of warranty and situations where no warranty is given. The customer and collecting banks only warrant to the payor making payment over an unauthorized signature of the maker or drawer of the item in good faith that he has no knowledge of the fact, and this warranty is not made by a holder in due course acting in good faith to a maker or drawer. . .

\* \* \* \* \* \*

This section will not substantially alter prior Indiana case law which followed the rule of *Price v. Neal* with its usual qualifications. In *Commercial & Savings Bank Co. v. Citizens Nat. Bank*, 68 Ind. App. 417, 120 N.E. 670 (1918), a drawee paying a collecting bank an item containing the forged signature of the drawer was not allowed to recover from the collecting bank on the theory that the drawee was presumed to know its customer's signature. The generally recognized exceptions to the rule of *Price v. Neal* were also recognized—i.e., that the drawee may be allowed to recover if the person receiving the payment was at fault in ascertaining the identity of the person from whom it took the instrument unless the drawee was at fault in failing to use reasonable care in examining the drawer's signature . . . . This section modifies the usual qualifications to the rule of *Price v. Neal* by allowing recovery only when the person receiving payment has knowledge of the unauthorized signature, or in the case of a holder in due course only when he acts in bad faith. Recovery in such cases will be denied where the payment is made by the payor in bad faith."

 We are cognizant of the appropriate scope of our review as an appellate court. It is well established that this court will not reweigh conflicting evidence on review. We may consider only that evidence which tends to support the trial court's judgment, together with all the reasonable inferences which may be drawn therefrom. If sufficient evidence is found to support the trial court's judgment, we are obliged to affirm. *Knightstown Lake Property Owners Association, Inc. v. Big Blue River Conservancy District*, (1978) Ind. App., 383 N.E.2d 361. When a judgment is attacked as being contrary to law, we neither weigh the evidence nor judge the credibility of witnesses. *Churchwell v. Coller and Stoner Building Co.*, (1979) Ind.App., 385 N.E.2d 492. Indeed, it is our duty to uphold the trial court's action on any valid legal theory supported by the evidence. *Charlie Stuart Oldsmobile, Inc. v. Smith*, (1976) Ind.App., 357 N.E.2d 247, reh. den., 369 N.E.2d 947. We may only reverse the judgment of the trial court without a jury when such judgment is clearly erroneous. *Tarrant v. Self*, (1979) Ind.App., 387 N.E.2d 1349. Such a showing is made when the evidence and reasonable inferences therefrom are undisputed and could only lead to a decision contrary to that of the trial court. *Blaising v. Mills*, (1978) Ind.App., 374 N.E.2d 1166.

The trial court did not enter any findings to enlighten us as to its reasons for entering judgment for NPB. In applying our standard of review to this case, we are obliged to determine whether any theory exists to support the judgment below, and next to determine whether sufficient evidence is in the record to support such a theory.

As our discussion above reveals, payment of an item is final in favor of a holder in due course or a person who has in good faith changed his position in reliance on the payment, unless a warranty of Ind. Code 26–1–4–207(1) has been broken. Ind. Code 26–1–3–418. There is no evidence that PCC changed its position in reliance on the payment, and that was not an issue at trial.

Under these facts, two possibilities arise that could support the trial court's judgment: (1) The trial court found PCC lacked holder in due course status and was thereby ineligible for the finality protection accorded such holders by Ind. Code 26–1–3–418; or (2) PCC was a holder in due course of the checks but acted in bad faith to NPB, breaching the warranty of Ind. Code 26–1–4–207(1)(b) against knowledge of the unauthorized signatures.

As to the question of whether PCC was a holder in due course of the checks, we must determine which party had the burden of proof as to the issue. If the burden was upon PCC, we could affirm the trial court by inferring that the court found PCC to have failed in its proof. If, on the other hand, NPB had the negative burden of showing that PCC was not a holder in due course, we must examine the record for evidence to support this finding.

A holder in due course is a holder who takes an instrument for value, in good faith, and without notice that it is over-due, or has been dishonored, or of any defense or claim to it on the part of any person. Ind. Code 26–1–3–302(1). The Code section which ostensibly allocates the burden of establishing holder in due course status is Ind. Code 26–1–3–307:

"(1) Unless specifically denied in the pleadings each signature on an instrument is admitted. When the effectiveness of a signature is put in issue

(a) the burden of establishing it is on the party claiming under the signature; but

(b) the signature is presumed to be genuine or authorized except where the action is to enforce the obligation of a purported signer who has died or become incompetent before proof is required.

(2) When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense.

(3) After it is shown that a defense exists a person claiming the rights of a holder in due course has the burden of establishing that he or some person under

whom he claims is in all respects a holder in due course."

■ This section is not applicable to this case. In the ordinary case where a defense to an instrument is shown, the burden is on the party claiming the rights of a holder in due course as provided in Ind. Code 26–1–3–307(3). This procedure is designed for the factual situation in which the person claiming holder in due course status is in possession of an instrument and is suing the maker, drawer, or other party on the instrument. It provides that absent a specific denial of the signature, the signature is admitted, and the holder is entitled to recover on the instrument unless the adverse party establishes a defense. Then the person claiming holder in due course status must prove that status. *See* Indiana Comment to IC 1971, 26–1–3–307 (Burns Code Ed.)

The liability of a drawee bank paying an instrument bearing the unauthorized signature of its depositor-drawer is fixed. NPB presented as its only witness its president, Dale Fout. His testimony showed substantially the following relevant facts: The checks were presented to NPB for payment; NPB's employee inspected the checks; the checks were paid; Allied notified NPB that the signatures were unauthorized and forwarded to NPB affidavits to that effect; and NPB attempted to return the checks to PCC's depository bank without success. Physical evidence included only the checks and Allied's affidavits of forgery.

■ We believe that the foregoing facts are insufficient to establish a prima facie case of PCC's liability on the checks. NPB had the further burden of proof of bringing itself within the exceptions of *Price v. Neal.* NPB offered no evidence whatsoever tending to show that PCC failed as a holder in due course, that it transferred the checks with any knowledge of the unauthorized signatures, or that PCC acted in bad faith to NPB in any respect. If we consider the testimony of PCC's witness, Earl Schiesz, the most that we could infer is that PCC was possibly negligent in

ascertaining the identity of R. E. Merriman, and as was recognized above, such negligence is no longer a viable exception to the rule of *Price v. Neal.* There is thus no showing that PCC is liable on the checks, and we cannot uphold the judgment of the trial court as a matter of law.

For the foregoing reasons, the judgment of the trial court is reversed. This cause is remanded with instructions to the trial court to enter judgment for Payroll Check Cashing, Division of Lou's Liquors.

Reversed and remanded with instructions.

ROBERTSON, P. J., and RATLIFF, J., concur.